Harold R. PRICE, Appellant,

v.

LITTON BUSINESS SYSTEMS, INC., Appellee.

No. 82–1275.

United States Court of Appeals, Fourth Circuit.

Argued Oct. 7, 1982.

Decided Dec. 9, 1982.

Norman B. Smith, Greensboro, N.C. (Smith, Patterson, Follin, Curtis, James & Harkavy, Greensboro, N.C., on brief), for appellant.

William T. Covington, Jr., Charlotte, N.C. (Joseph B.C. Kluttz, Kennedy, Covington, Lobdell & Hickman, Charlotte, N.C., on brief), for appellee.

Before PHILLIPS and CHAPMAN, Circuit Judges, and WALTER E. BLACK, Jr.,

United States District Judge sitting by designation.

JAMES DICKSON PHILLIPS, Circuit Judge:

This action arises out of a claim brought by appellant Harold Price against Litton Business Systems, Inc. under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621–634. The district court granted Litton's motion for summary judgment on the basis that Price had failed to file his age discrimination charge with the Equal Employment Opportunities Commission (EEOC) within the statutorily prescribed 180-day time period. *Id.* § 626(d). We affirm the district court.

I

Price was employed by Litton as branch manager of its Greensboro, North Carolina branch office, after a long relationship with the company in several other positions. The alleged discriminatory act occurred on February 5, 1980, when Litton informed Price he would be removed as branch manager of the Greensboro office effective February 8, 1980.[1] Price performed no duties as branch manager after February 9, 1980, and the position was filled by a new branch manager on March 3, 1980. Price was retained in a sales position for the balance of February, and then was placed on a three-month personal leave of absence during which he performed no work for the company and received no compensation other than accrued benefits and back pay. By affidavit, Price indicated he did not consider his relationship with Litton terminated until May 30, 1980, when his personal leave ended.

There was a series of communications between Price and Litton following his removal as branch manager of the Greensboro office. On February 5, Price was told "that other opportunities [within the company] . . . would be investigated for him." On

---

[1]. Without addressing the merits of Price's claim, we note in passing that he was told in early January of the company's disappointment with the performance of the Greensboro office, and that "substantial improvement" would be needed during January if he were to remain in his post. Affidavits by Litton executives indicated they had been deeply concerned for almost a year prior to the January admonition about the performance of Price and the Greensboro office.

February 12, Price was informed by letter that his supervisors wanted him to stay with the company, and during the few weeks ahead would "contact [him] with some concrete offers for [his] consideration." On February 19, Price received a letter stating that Litton "was making every effort to find another opportunity in the [company] which would be acceptable to [him]." This was followed by a letter on February 26 setting forth three possible opportunities for Price's consideration. Finally, on April 14, Price received a letter detailing more job prospects, as well as confirming that his leave of absence would end on May 30. All of the job opportunities referred to in these letters involved lesser positions with Litton than that of branch manager.

Price filed his ADEA claim with the EEOC on November 24, 1980, 178 days after his leave of absence ended, but obviously after time had run on events occurring during February through April. He advances two theories under which his filing would not be barred by the statute of limitations: either that the statute did not begin to run until May 30, or that Litton is equitably estopped by its actions from asserting the 180-day limit.

### II

■ In his complaint to the EEOC and on this appeal, Price alleges only one act of discrimination: his removal as branch manager of the Greensboro office. He does not allege, nor does the record support, any separate acts of discrimination between February 5 and his departure from the company on May 30. In this circumstance, as the Supreme Court made clear in *Delaware State College v. Ricks*, 449 U.S. 250, 101

S.Ct. 498, 66 L.Ed.2d 431 (1980), the filing period runs from the time at which the employee is informed of the allegedly discriminatory employment decision, regardless of when the effects of that decision come to fruition. *Accord Chardon v. Fernandez*, 454 U.S. 6, 102 S.Ct. 28, 70 L.Ed.2d 6 (1981). Therefore, Price's claim did not arise, as he suggests, on May 30 when he finally left the company; rather, the 180-day period began to run on February 5 when he was told he would be relieved of his position, and the November filing with the EEOC was thus time-barred.

### III

■ Price argues in the alternative that Litton should be equitably estopped from raising the statute of limitations as a defense to this action.[2] On this view, the statute would be tolled due to the steps taken by Litton to ameliorate the effects of its decision to remove Price as branch manager in Greensboro. We have recently held as a matter of law, however, that the attempt to mitigate the harshness of a decision terminating[3] an employee, without more, cannot give rise to an equitable estoppel. *See Lawson v. Burlington Industries, Inc.*, 683 F.2d 862, 864 (4th Cir.), *cert. denied*, —— U.S. ——, 103 S.Ct. 257, 74 L.Ed.2d 201 (1982). The statute of limitations will not be tolled on the basis of equitable estoppel unless the employee's failure to file in timely fashion is the consequence either of a deliberate design by the employer or of actions that the employer should unmistakably have understood would cause the employee to delay filing his charge. An employee's hope for rehire, transfer, promotion, or a continuing employment relationship—which is all that

**2.** The Supreme Court recently has made clear that the 180-day filing requirement is not a jurisdictional prerequisite and hence is subject to equitable modification. *See Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982).

**3.** Price argues that summary judgment was inappropriate here because there exists a genuine issue of material fact as to whether and when he was terminated by the company. He attempts to invoke the rationale of *Bonham v. Dresser Industries, Inc.*, 569 F.2d 187, 192 (3d Cir.1977), *cert. denied*, 439 U.S. 821, 99 S.Ct.

87, 58 L.Ed.2d 113 (1978), where the Third Circuit held that "[t]he 180-day period does not begin to run until the employee knows, or as a reasonable person should know, that the employer has made a final decision to terminate him, and the employee ceases to render further services to the employer." Without endorsing this approach, we note that the *Bonham* conditions were satisfied here: Price was told unequivocally he was terminated as branch manager, and he ceased providing services to Litton by the end of February.

Price asserts here—cannot toll the statute absent some employer conduct likely to mislead an employee into sleeping on his rights. *See Wilkerson v. Siegfried Insurance Agency, Inc.,* 621 F.2d 1042, 1045 (10th Cir.1980); *Coke v. General Adjustment Bureau, Inc.,* 616 F.2d 785, 790 (5th Cir.1980). Because the undisputed facts disclosed on the summary judgment record reveal that as a matter of law equitable estoppel could not apply, summary judgment for Litton on this issue was appropriate. *See Wagner v. Sperry Univac,* 458 F.Supp. 505, 516 (E.D. Pa.1978), *aff'd mem.,* 624 F.2d 1092 (3d Cir. 1980). *Cf. Aronsen v. Crown Zellerbach,* 662 F.2d 584, 595 (9th Cir.1981) (summary judgment improper where an estoppel might have arisen due to employer's alleged plan that would intentionally or foreseeably lull grievants into delaying ADEA filings), *petition for cert. filed,* 51 U.S.L.W. 3260 (U.S. Oct. 5, 1982) (No. 82–495).

AFFIRMED.