**E. Kingsley MULL, Plaintiff,**

v.

**ARCO DURETHENE PLASTICS, INC., Defendant.**

**No. 80 C 3074.**

United States District Court, N.D. Illinois, E.D.

Nov. 28, 1984.

Roger L. Price, Philip C. Stahl, Michael A. Kahn, Reuben & Proctor, Chicago, Ill., for plaintiff.

Ronald Wilder, Marci Eistenstein, Patricia Dondanville, Schiff, Hardin & Waite, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

GETZENDANNER, District Judge:

On January 16, 1980, plaintiff E. Kingsley Mull instituted the present action under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 626, alleging that ARCO Polymers, defendant's statutory predecessor, had demoted and forced him into early retirement on account of his age. As discovery progressed, ARCO learned that Mull had been involved in multi-million real estate ventures which had interfered with his performance while working for ARCO. Defendant also learned that Mull had carried on an extensive consulting business on the side with several of ARCO's subcontractors from which he received over $300,000 in payments. ARCO's discovery of these matters led not only to counterclaims against Mull and the subcontractors, but also to Mull's filing for personal bankruptcy and a federal indictment to which Mull pled *nolo contendere* and accepted three years probation. The matter is now before the court on the motion of the defendant for summary judgment. For the reasons stated below, the motion is granted.

## I

This summary judgment motion, consistent with the litigation that spawned it, has a protracted history. On July 7, 1981, ARCO filed a motion for partial summary judgment on the ground that plaintiff's claims relating to his demotion were time-barred for failure to file with the EEOC within 180 days of learning about his demotion. *See* 29 U.S.C. § 626(d). For discovery-related reasons, the motion did not become fully briefed until August 23, 1982, at which time ARCO filed for full summary judgment in light of new deposition testimony indicating that Mull knew of his impending termination more than 180 days before the date of his EEOC filing.

Because of the plaintiff's subsequent bankruptcy filing, a briefing schedule was not set on the motion until December, and the original briefing schedule went unobserved. On September 21, 1983, the trustee in bankruptcy informed the court of his intent to prosecute the case, and a new briefing schedule was established a short while thereafter. Again, however, plaintiff failed to adhere to the schedule, and the court on April 10, 1984 ordered the trustee to respond by June 11, 1984. The trustee filed his response on June 22, 1984, and the matter finally became fully briefed on July 20, 1984.

## II

In contrast to the proceedings which it occasioned, the facts underlying ARCO's summary judgment motion are relatively straightforward. On April 19, 1979, plaintiff was informed by Robert Kauffman, his supervisor, that he was to be removed from his position as Business Manager of ARCO's Chicago Plant, effective May 14, 1979. Kauffman at that time presented Mull with two options: either accept a coordinator's job in Philadelphia or take early retirement. On April 24, 1979, William K. Allshouse, Manager of Headquarters Employee Relations, sent plaintiff a letter enclosing retirement figures calculated on the basis of a June 1, 1979 retirement date.

On April 27, 1979, plaintiff wrote a memorandum to Kauffman requesting reconsideration of the latter's decision. Kauffman never responded in writing. However, on May 2, Kauffman and Allshouse met with plaintiff. At this meeting, Mull explored with Kauffman and Allshouse the possibility of remaining in Chicago to perform the coordinator's job. Kauffman, however, insisted that the job could only be done in Philadelphia. Mull agreed to review that Philadelphia decision as soon as his wife could make a trip to Philadelphia with him. In the meantime, Mull would be put on special assignment in Chicago after his removal from the business manager's job.

At his first deposition, Mull denied any discussion as to how long this special assignment would continue (First Deposition at 84–85). At his second deposition, however, Mull admitted that the assignment was temporary—only to last to the end of the year or until such time as he accepted the Philadelphia offer—and that his only option for a permanent job with ARCO was to move to Philadelphia (Second Deposition at 1421, 1430, 1441).

On May 11, 1979, Kauffman circulated a memorandum announcing that, effective May 14, Mull would cease to be Business Manager and would be reporting to Kauffman on special assignment. The same memo announced that Mr. Carl Gomes was "temporarily" assigned to the position of Acting Business Manager. In his second deposition, plaintiff testified that he understood this memorandum to distinguish between the "temporary" assignment given Gomes and the "special" assignment which he had received, and that he assumed his new assignment to be, if not of indefinite duration, at least a stepping stone to a permanent job. Mull testified that he knew of several people who had gone on from special assignments to permanent jobs, but that he knew of no one who was retained on special assignment indefinitely (p. 1498). Mull admitted, however, that he never discussed the duration of the new assignment with either Kauffman or Allshouse (p. 1436, 1495–96), and that his current understanding of his prospects for

continued employment was "optimistic" given what had had been told at the May 2 meeting (p. 1442).

In June 1979, plaintiff decided not to move to Philadelphia and informed Allshouse of this fact. Plaintiff received further special assignments from Kauffman, several of which involved long-range projects. Given the nature of his work, plaintiff continued to assume that he would remain with ARCO on a permanent basis, but did not discuss this fact with either Kauffman or Allshouse.

On November 28, 1979, plaintiff was called to Allshouse's office to discuss his retirement sign-up. Plaintiff argued that he was not prepared to retire, and would have to review these things with his attorney. On December 6, 1979, the defendant sent plaintiff written notification that he would be terminated on December 31. Such written notice of discharge was standard company policy. Plaintiff's last day of work was December 31, 1979. On January 16, 1980, he filed both his EEOC charges and also a charge with the Attorney General of the State of Illinois.

## III

An age discrimination suit may not be filed in district court unless the plaintiff has filed a charge with the EEOC within 180 days from the date the alleged discriminatory act occurred. 29 U.S.C. § 262(d)(1).[1] In *Delaware State College v. Ricks*, 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980), the Supreme Court held that the similar 180 day period under Title VII begins to run on the date the employer's discriminatory decision is made and communicated to the plaintiff, not when the consequences of the decision become final. In *Ricks*, a college professor claimed he had been discriminatorily denied tenure. No EEOC complaint was filed, however, until after the professor's one year "termi-

nal" contract had run out, well over 180 days from the time his tenure was denied. The Court held that the complaint was time-barred, since the only discriminatory act alleged was the tenure decision: "[m]ere continuity of employment, without more, is insufficient to prolong the life of a cause of action for employment discrimination." *Id.* at 257, 101 S.Ct. at 504.

In *Chardon v. Fernandez*, 454 U.S. 6, 102 S.Ct. 28, 70 L.Ed.2d 6 (1982), the Court followed *Ricks* to hold that a § 1983 suit challenging politically motivated firings was time-barred for failure to file within the applicable limitations period of one year. Again, the Court measured the period from the time notice of termination was given, and not when employment had ceased. The Court noted that the plaintiffs had alleged no "illegal acts subsequent to the date on which the decisions to terminate were made," thereby suggesting that plaintiffs could not circumvent the rule of *Ricks* simply by claiming that the termination itself was unlawful. *Id.* at 8, 102 S.Ct. at 29. As it had in *Ricks*, the Court stressed that the "proper focus is on the time of the *discriminatory* act, not the point at which the *consequences* of the act become painful." *Id.* (emphasis in original). The Court also noted that the plaintiffs "were afforded reasonable notice" of their termination and therefore could not argue for an extension of the filing date. *Id.*

■ In the present case, plaintiff was notified of his demotion on April 19, 1979, and was unequivocally told on May 2, 1979 that he would be discharged as of the end of 1979 unless he chose to move to Philadelphia. Although plaintiff has equivocated and contradicted himself at times as to whether the termination date was mentioned, the court finds no genuine issue of material fact as to what was actually said at the

---

1. In "deferral" states which have agencies authorized to remedy age discrimination the 300-day filing period of § 626(d)(2) will often govern. Illinois was not a deferral state when the alleged discrimination in this case occurred. *See Willis*

*v. Berger Transfer & Storage, Inc.*, 529 F.Supp. 279, 281 (N.D.Ill.1981). The parties have briefed this motion on the assumption that the applicable time limit is 180 days.

meeting.[2] Under the *Ricks* decision, the 180 day period of § 626(d)(1) would therefore begin to run on April 18 for the demotion claims and no later than May 2, the date on which Mull received notice of his impending termination, for the discharge-related claims. Since Mull did not file until January 1980, it follows that his claims are time-barred under a strict adherence to *Ricks* and *Chardon.*

The *Ricks* decision has been applied to ADEA cases, *see, e.g., Price v. Litton Business Systems, Inc.,* 694 F.2d 963 (4th Cir.1983), and plaintiff does not argue otherwise. The plaintiff does argue, however, that the *Ricks* decision is inapplicable to the present case because the oral notice given Mull in the spring of 1979 was not in accordance with standard ARCO policy requiring written notice. Second, plaintiff contends that *Ricks* represents a new rule of law which should not be given retroactive effect. Finally, plaintiff argues that even if *Ricks* applies, he has made an adequate showing to justify equitable tolling of the limitations period. The court will address all three of these arguments.

██ Mull's first argument—that the limitations period should run from the date of written rather than oral notice in this case—is without merit. *Ricks* requires only "reasonable" notice, not written notice. That ARCO generally utlizes written termination notices does not render the oral notice given Mull per se unreasonable nor does it somehow render that earlier notice equivocal. Mull's filing, of course, would be timely if the November notice constitut-

ed a new act of discrimination sufficient to re-trigger the limitations period, but Mull does not press this point. Rather, Mull contends that the events from spring until December constitute an ongoing ADEA violation which culminated in his termination. It is settled law, however, that the continuing impact of a discriminatory decision cannot form the basis for starting the filing period anew unless the plaintiff alleges a "present violation" which would bring his claim within the limitations period. *United Airlines, Inc. v. Evans,* 431 U.S. 553, 558, 97 S.Ct. 1885, 1889, 52 L.Ed.2d 571 (1977); *Tobin v. Trans Union Systems Corp.,* 488 F.Supp. 622, 629 (E.D.Pa.1980). Even resolving all disputed facts in Mull's favor, the court can find no evidence to suggest that the December notice was anything other than a written formalization of decision reached back in May.[3]

██ Mull's second argument—that *Ricks* should be denied retroactive effect—is of more moment. In *Elliott v. Group Medical and Surgical Service,* 714 F.2d 556, 563 (5th Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 2658, 81 L.Ed.2d 364 (1984), the Fifth Circuit cited *Chevron Oil Co. v. Huson,* 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971) as authority for the general proposition that "new judge-made rules on limitations" should not be applied retroactively, and declined to apply *Ricks* or *Chardon* to an action which was timely under that circuit's previous interpretation of § 626. Plaintiff argues that Mull's complaint would have been timely under the law of this circuit prior to *Ricks,* and that

---

**2.** The trustee has argued, in reliance on Mull's First Deposition testimony, that there is a factual dispute as to whether Mull was told in May that his assignment would only be temporary. The court notes that a factual dispute cannot be created simply because the plaintiff contradicts himself. Even giving full credit to the plaintiff's first deposition, however, Mull's later deposition testimony as to what was said at the May meeting merely augments, without contradicting, his prior testimony in which he could not recall the substance of the meeting. Exactly what Mull understood his employment status to be is, of course, a separate matter from what was said to him.

**3.** The defendant has argued that, even if Mull's termination claims were independent and therefore timely, summary judgment would still be proper, since plaintiff has failed to show that the defendant sought to replace him in the special assignment position by a member of a non-protected group. Replacement by a member outside the protected age group, however, is not an essential element of a prima facie case under the ADEA, so long as the plaintiff offers some evidence from which an intent to discriminate can be inferred. Defendant does not address whether the plaintiff has otherwise failed to establish a prima facie case, and this court will not decide the matter on its own initiative.

*Elliott* therefore compels denial of the defendant's motion.

While the question plaintiff poses is not beyond debate, the court disagrees. *Chevron* nowhere states the proposition for which it is cited in *Elliott*, but instead sets forth three factors used to determine if retroactive application in a given case might be inappropriate:

First, the decision to be applied retroactively must establish a new principle of law either by overruling clear past precedent on which litigants may have relied, or by deciding an issue of first impression whose resolution was not clearly foreshadowed. Second, it has been stressed that "we must ... weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation." Finally, we have weighed the inequity imposed by retroactive application, for "[w]here a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our case for avoiding the 'injustice or hardship' by a holding of nonretroactivity."

404 U.S. at 106–07, 92 S.Ct. at 355–56 (citations omitted).

With respect to the first factor, plaintiff has not made any showing that the court in *Ricks* or *Chardon* abruptly overruled clear past precedent or decided an issue whose resolution was not clearly foreshadowed. Prior to *Ricks*, the definition of when a discriminatory act occurred for limitations purposes was a subject of dispute. *Compare Bonham v. Dresser Industries, Inc.*, 569 F.2d 187, 192 (3d Cir.1977), *cert. denied*, 439 U.S. 821, 99 S.Ct. 87, 58 L.Ed.2d 113 (1978) (unequivocal notice plus cessation of services) with *Moses v. Falstaff Brewing Corp.*, 525 F.2d 92, 94 (8th Cir. 1975) (date of official termination). While the Court's eventual resolution was at odds with what the majority of circuits had held, *see Chardon*, 454 U.S. at 10, 102 S.Ct. at 30

(Stevens, J., dissenting), prior precedent was not so "clear" that plaintiff can now claim to have justifiably relied on it. *Ricks*, after all, did not concern a *new* statute of limitations for ADEA claims; the Court merely resolved the time at which a discriminatory act occurs within the meaning of the Title VII filing requirements, and relied on past precedent—both its own and that of lower courts—in reaching its conclusion. *See* 449 U.S. at 258, 260, 101 S.Ct. at 505. The plaintiff's claim that *Ricks* abruptly overturned prior law is overstated. Moreover, the present case reveals no reliance on prior case law which would justify solely prospective application of *Ricks*: Mull's failure to file with the EEOC before January is traceable mostly to his not contacting a lawyer before November, and not to any reliance on prior case law.

The second *Chevron* factor is also not met, insofar as giving retroactive effect to the rule in *Chardon* and *Ricks* would clearly further its purpose. In *Ricks*, the Court noted that the limitations provisions of Title VII, "while guaranteeing the protection of the civil rights laws to those who promptly assert their rights, also protect employers from the burden of defending claims arising from employment decisions that are long past." 449 U.S. at 256–57, 101 S.Ct. at 503–04. The court noted that limitations periods generally reflect a "value judgment" as to the point where the interests in prohibiting stale claims outweigh the interests in protecting valid ones. *Id.* at 260, 101 S.Ct. at 505 (quoting *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 463–64, 95 S.Ct. 1716, 1721–22, 44 L.Ed.2d 295 (1975)). To deny retroactive application of *Ricks* would upset this value judgment by requiring employer-defendants to litigate stale claims, and by allowing Title VII or ADEA plaintiffs who filed suit prior to December 1980 (the date of *Ricks*) to proceed despite having failed to assert their rights promptly.[4]

---

4. The court is confirmed in this conclusion by noting that the Seventh Circuit recently gave retroactive effect to the limitations period announced in *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983). *See Landahl v. PPG*

Finally, the court finds no inequity which would justify denying retroactive application of the *Ricks* case to Mull. In both *Ricks* and *Chardon* the Supreme Court gave retroactive effect to its ruling by dismissing the complaints as time-barred. Most federal courts following *Ricks* have applied its holding to pre-1981 filings without discussion: *see, e.g., Berry v. Board of Supervisors*, 715 F.2d 971, 980 (5th Cir. 1983); *Herman v. National Broadcasting Co., Inc.*, 569 F.Supp. 282, 285 n. 4 (N.D.Ill. 1983); *Ka Nam Kuan v. City of Chicago*, 563 F.Supp. 255, 256–57 (N.D.Ill.1983). The court fails to see why plaintiff should be treated otherwise. Moreover, because the filing requirements of the ADEA are not jurisdictional in nature and may be tolled for equitable reasons, *Kephart v. Institute of Gas Technology*, 581 F.2d 1287, 1289 (7th Cir.1978), any hardship resulting from retroactive application of *Ricks* can best be dealt with on a case-by-case basis. Therefore, plaintiff's arguments against retroactive application must fail.

## IV

Having decided that the plaintiff's EEOC filing was untimely, the court must now address whether any circumstances exist to justify tolling of the limitations period. In *Vaught v. R.R. Donnelley & Sons*, 745 F.2d 407 (7th Cir.1984), the Seventh Circuit noted that failure to file a timely charge will bar an ADEA action "unless the plaintiff satisfies the court that the filing deadline was tolled on equitable grounds." The court cited *Reeb v. Economic Opportunity Atlanta, Inc.*, 516 F.2d 924, 931 (5th Cir. 1975), for the standard that the filing period may be tolled up to the time when "facts that would support a charge of dis-

crimination ... were apparent or should have been apparent to a person with a reasonably prudent regard for his rights similarly situated to the plaintiff." The court then held that an ADEA plaintiff between the ages of forty and seventy who knew that he was qualified to continue his job but was demoted, and whose employer sought somebody to replace him, had sufficient notice that his rights might have been violated to activate the filing period.

In the present case, Mull knew no later than May 2, 1979, that he was being demoted and urged to take early retirement, and that ARCO was seeking someone else to take over the business manager position. Under *Vaught*, these facts are sufficient to trigger the limitations period. Therefore, absent allegations that ARCO somehow induced Mull to sleep on his rights, say by intimidation or misrepresentation, no grounds for equitable tolling will lie. *See Price v. Litton Business Systems, Inc.*, 694 F.2d 963, 965–66 (4th Cir.1982).

In *Price*, the Fourth Circuit upheld summary judgment for the defendant in an ADEA case under circumstances similar to those alleged by Mull. Price was employed as a branch manager. On February 5, 1980, he was informed that he would be removed from that position effective February 8, 1980. Price was retained in a sales position for the balance of February, and was then placed on a three-month personal leave of absence during which he performed no work for the company and received no compensation other than accrued benefits and back pay. During the interim period, Price was informed that Litton was making efforts to find him another opportunity within the company, but that in

*Industries, Inc.*, 746 F.2d 1312 (7th Cir.1984). In *DelCostello*, the Supreme Court held that the six-month statute of limitations prescribed in section 10(b) of the Labor Management Relations Act, 29 U.S.C. § 160(b), governed employment discharge cases alleging union breaches of the duty of fair representation and employer breaches of a collective bargaining agreement. As had the First, Third, Fourth, Fifth, Sixth, Eighth, and Eleventh Circuits before it, the Sev-

enth Circuit in *Landahl* applied the *Chevron* factors to conclude that giving retroactive effect to the six-month limitations period would further its operation. At 1315. In light of this overwhelming case law, the court finds unpersuasive *Elliott's* statement that "As a general proposition, new judge-made rules on limitations are not to be applied retroactively." 714 F.2d 563.

any event his leave of absence would end on May 30. 694 F.2d at 964–65.

Noting that Price alleged only his removal from the branch manager position as a discriminatory act, the court found the complaint time-barred under *Ricks,* using February 5 as the triggering date, and held that Litton could not be equitably estopped from raising the statute of limitations solely due to its efforts to ameliorate the harshness of Price's termination. *Id.* at 965. *See also Lawson v. Burlington Industries, Inc.,* 683 F.2d 862, 864 (4th Cir.), *cert. denied,* 459 U.S. 944, 103 S.Ct. 257, 74 L.Ed.2d 201 (1982) (same). The court stressed that Price had alleged no employer conduct likely to mislead him into sleeping on his rights, and that Litton could not be estopped on the basis of Price's hopes and expectations for continued employment. 694 F.2d at 965–66.

Similarly, in *Wagner v. Sperry Univac,* 458 F.Supp. 505, 515–16 (E.D.Pa.1978), *aff'd mem.,* 624 F.2d 1092 (3d Cir.1980), the court found that placement efforts to lessen the harshness of an employee's termination would not suffice to toll the filing deadline of the ADEA absent "misrepresentations ... as to the likelihood of future re-employment" or other action likely to mislead an employee into delaying assertion of his rights. The court recognized that this resolution puts discharged employees in the difficult situation of having to jeopardize ongoing reinstatement discussions in order not to lose their ADEA rights, but reasoned that this objection could apply with equal force to almost any statute of limitations. *Id.* at 516. The court therefore held that the employee's reasonable belief as to the uncertainty of his employment status and hope for reinstatement could not toll the filing period when the employer had not engaged in any deceitful or manipulative conduct.

The present case is in most respects indistinguishable from *Price* and *Wagner.* Mull was told as early as April 1979, that he was to lose the business manager job, and would have to move to Philadelphia to avoid early retirement. At the May 2 meeting, the early retirement date was postponed in order to give Mull more time to decide about accepting the Philadelphia job. Once Mull decided *not* to accept this job, there were no further discussions about permanent employment. Under these circumstances, the court finds even less justification for tolling than that existing in *Price* and *Wagner,* since there were no informal settlement discussions which Mull would jeopardize by an EEOC filing.

Plaintiff argues, based on *Kephart v. Institute of Gas Technology,* 581 F.2d 1287 (7th Cir.1978), that the Seventh Circuit, following a more liberal standard for tolling than that adopted in *Price,* will not begin to compute the filing period until the "employee either retains an attorney or acquires actual knowledge of his rights under the ADEA." 581 F.2d at 1289. That language, however, addresses only the narrow situation where an employer has failed to post notices informing employees of their ADEA rights, as required under 29 U.S.C. § 627. As the recent case of *Vaught* demonstrates, the Seventh Circuit has not followed *Kephart* as a general proposition. This court must therefore determine whether Mull has presented any material facts which could justifiably estop ARCO from invoking the deadline.

■ Mull presents three arguments for tolling the filing deadline on equitable grounds: 1) that he reasonably relied on ARCO's standard policy of issuing written termination notices in considering his oral notice less than final; 2) that he reasonably construed the May 11 memo's distinction between the "temporary" assignment given Carl Gomes and the "special" assignment given him to mean that his own assignment was permanent; and 3) that ARCO induced him to believe these facts by not pressing him to take early retirement until after the 180 day period had run. None of these arguments is persuasive.

Regarding Mull's first argument, the court does not see why a company's failure to follow its standard procedures in discharging an employee should entitle that

party to disregard an unequivocal notice of discharge and unilaterally assume that he will be reinstated. If anything, ARCO's failure to issue a formal written notice should have alerted Mull to the possibility that he was being treated discriminatorily. Mull admitted being told on May 2, 1979 that his only prospect for a permanent job was to move to Philadelphia. When he chose not to exercise that option, he informed Allshouse of that fact and then assiduously avoided the subject with either Kauffman or anyone else above him. Under these circumstances, ARCO's failure to issue a formal notice prior to December does not comprise employer conduct which would foreseeably lead Mull to delay his EEOC filing.

Regarding Mull's second argument, the court finds Mull's overly optimistic construction of the May 11 memorandum insufficiently reasonable to justify tolling the filing deadline. *See Naton v. Bank of California,* 649 F.2d 691, 696 (9th Cir.1981) (finding of estoppel requires both "actual and reasonable reliance" on the employer's conduct). Mull admitted that he knew of no one who had been retained on special assignment indefinitely, but nonetheless construed the term "special" assignment to imply a promise of permanence simply by contrast to the "temporary" assignment given Gomes. Mull also argued that he knew of many employees who had moved from special assignments to permanent positions so as to justify his construction. That Mull knew this latter fact, however, only confirms the point that "special" assignments were by their very nature temporary. Thus, while the upward mobility of most employees on special assignment lent a rational basis to Mull's hope for permanent reinstatement, it does not justify interpreting the May 11 memorandum as foreseeably incorporating such a promise. Mull admittedly never discussed his expectation of a permanent job with his superiors. Any expectation of a permanent job based on the May 11 memo was therefore unilateral on his part, contradictory to what he had been told on May 2, and can-

not fairly be invoked to estop ARCO from asserting the untimely filing as a defense.

Mull's final argument—that Kauffman induced him into thinking he had a permanent job—must also fail. Mull has testified that Kauffman never brought up the subject of early retirement and gave Mull assignments relating to long-term projects. Mull also testified, however, that he received no compensation review nor wage increase during that period. Kauffman's conduct is more consistent with an effort to avoid humiliating Mull than it is with an effort to mislead him into expecting future employment. Such conduct falls far short of the affirmative misrepresentation most courts have required before they will toll the statute on equitable grounds.

In sum, then, Mull has shown no material facts, either in his affidavit or deposition testimony, which could support a finding that his January 1980 filing was timely. The defendant's motion for summary judgment is therefore granted.

It is so ordered.