831 F.2d 291
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
John E. SINCLAIR, Plaintiff-Appellant,
v.
PRUDENTIAL-BACHE SECURITIES, INC., Defendant-Appellee.
 No. 86-1695.
 United States Court of Appeals, Fourth Circuit.
 Argued: April 8, 1987.
Decided: Oct. 9, 1987.
 
 Appeal from the United States District Court for the Middle District of North Carolina, at Greensboro. Richard C. Erwin, District Judge. (CA-85-1148).
 Norman Barrett Smith (Smith, Patterson, Follin, Curtis, James & Harkavy on brief) for appellant,
 John Robbins Wester (David C. Wright, III, Robinson, Bradshaw & Hinson, P.A., on brief) for appellee.
 M.D.N.C.
 AFFIRMED.
 Before HARRISON L. WINTER, Chief Judge, SPROUSE, Circuit Judge, and BUTZNER, Senior Circuit Judge.
 BUTZNER, Senior Circuit Judge:
 
 
 1
 John Sinclair appeals the judgment of the district court dismissing his action against Prudential-Bache under the Age Discrimination in Employment Act, 29 U.S.C. Secs. 621-34, as untimely filed. We affirm.
 
 
 2
 * Sinclair managed Prudential-Bache's Greensboro brokerage office from 1973 until the beginning of this controversy. In July of 1983, shortly after Sinclair's 62nd birthday, he met with Jack Graner, defendant's regional manager, to discuss his employment future. Sinclair left this meeting understanding that he would be replaced as office manager as of December 1983. He claims, however, that Graner promised him that he would be made a district manager until his retirement at age 65 and that he would be guaranteed a salary of $100,000 until that date--a figure which would qualify him for maximum pension benefits.
 
 
 3
 The parties agree that in a meeting on November 29, 1983, Graner informed Sinclair that he would not be made a district manager and that his guaranteed salary would be only $56,000. Sinclair has ever since been paid in accordance with that announcement. Three days after this meeting Sinclair, apparently suspecting age discrimination, stopped by an EEOC office to pick up some information.
 
 
 4
 On December 9, 1983, Sinclair wrote a letter to Graner objecting to the compensation package announced by Graner at the November 29 meeting, stating his own understanding that a $100,000 salary had been promised and requesting an amicable resolution of the dispute. He received no reply. In early 1984 he discussed his grievance with a Charlotte attorney experienced in age discrimination cases and paid him a retainer. Both the EEOC and the attorney, Sinclair testified, told him that he would have no case unless, at the end of 1984, he had not been paid $100,000. He filed no charge at this time.
 
 
 5
 Throughout 1984, Sinclair was paid at the lower, $56,000 rate. He met again with Graner on July 6, 1984, at which time Sinclair says that Graner promised to make up the shortfall of the $100,000 figure before the year was out. Sinclair testified that he did not believe this promise.
 
 
 6
 Later in 1984 Sinclair raised the matter with George McGough, one of Prudential-Bache's executive vice presidents and a long-time acquaintance of Sinclair's, who assured him that "I'll have this thing straightened out in a week." Subsequently, in Sinclair's words, McGough "threw his hands up in regard to the matter and turned it over to Bob Sherman." Sinclair met with Sherman, defendant's executive vice president in charge of branches, in April of 1985. When he was informed following this meeting that nothing could be done for him, he retained different counsel and filed a charge of age discrimination with the EEOC on May 20, 1985.
 
 
 7
 Following discovery, the district court found that Sinclair's complaint had not been filed with the EEOC within 180 days of the alleged discriminatory conduct as required by 29 U.S.C. Sec. 626(d)(1). The court also found that the limitation period had not been tolled. It granted summary judgment in favor of Prudential-Bache.
 
 II
 
 8
 Sinclair filed his claim over 17 months after he was told in unambiguous terms that he would receive a salary of only $56,000 and that he would not be appointed to the district position he felt he had been promised. He argues that his claim was nevertheless timely for three reasons:
 
 
 9
 (1) he was the victim of a continuing violation renewed every time he was paid at less than a $100,000 per year rate,
 
 
 10
 (2) the discriminatory acts against him were part of a broader, continuing pattern or practice of age discrimination on the part of Prudential-Bache, and
 
 
 11
 (3) he was misled by the actions and assurances of the defendant's officers into sleeping on his rights until some time within 180 days of May 20, 1985, a circumstance calling for equitable tolling of the time limit for filing.
 
 
 12
 In rejecting the first argument, the district court correctly relied on Delaware State College v. Ricks, 449 U.S. 250, 258 (1980), and Price v. Litton Business Systems, Inc., 694 F.2d 963 (4th Cir.1982), which held that the time of the unlawful discrimination for purposes of the filing period is "the time at which the employee is informed of the allegedly discriminatory employment decision, regardless of when the effects of that decision come to fruition." 694 F.2d at 965.
 
 
 13
 By November 29, 1983, the regional manager had informed Sinclair that he would be replaced as office manager, he would not be named regional manager, and his guaranteed salary would be $56,000. His cause of action accrued at that time. The 180-day statute of limitations ran out on May 29, 1984, long before Sinclair filed his complaint in April 1985.
 
 
 14
 The diminished pay checks Sinclair received each fortnight were merely the effects of a previously and clearly announced decision, not new discriminatory wrongs. The same is true of Prudential-Bache's unvarying refusal to assign him duties he considered "meaningful" following his removal as office manager.
 
 
 15
 We also agree with the district court that Sinclair's scant statistical evidence was not sufficient to raise a genuine issue concerning the existence of a broader pattern or policy of age discrimination of which his treatment might have been a part.
 
 III
 
 16
 Sinclair's claim would only survive if the filing period were equitably tolled. Price explains, 694 F.2d at 965-66, the principles of equitable estoppel that apply to an age claim:
 
 
 17
 The statute of limitations will not be tolled on the basis of equitable estoppel unless the employee's failure to file in timely fashion is the consequence either of a deliberate design by the employer or of actions that the employer should unmistakably have understood would cause the employee to delay filing his charge. An employee's hope for rehire, transfer, promotion, or a continuing employment relationship ... cannot toll the statute absent some employer conduct likely to mislead an employee into sleeping on his rights.
 
 
 18
 The record discloses no act by company officials during the 180-day period between November 29, 1983, and May 29, 1984, that caused Sinclair to delay filing his charge. The conversations and correspondence that occurred from July 1984 to April 1985 could not toll the limitation period that expired in May 1984. At the most they were efforts taken by some company officials to mitigate the November 29, 1983, decision which Sinclair was protesting. But actions taken to mitigate the harshness of an employment decision are not a basis for estoppel. See Price, 694 F.2d at 965; Lawson v. Burlington Industries, Inc., 683 F.2d 862, 864 (4th Cir.), cert. denied 459 U.S. 944 (1982).
 
 
 19
 Sinclair suggests that the 180-day filing period should be tolled because an EEOC employee told him in December 1983 that he would not have a claim unless the company failed to pay him $100,000 by December 31, 1984. He consulted a lawyer in early 1984, well within the limitation period, who gave him the same advice. Not until Sinclair retained new counsel, more than a year later, did he institute this action.
 
 
 20
 There is precedent for tolling the filing period because the EEOC has deterred the claimant from filing a complaint by furnishing misinformation. See, e.g., Jarrell v. U.S. Postal Service, 753 F.2d 1088, 1091-92 (D.C.Cir.1985); McKee v. McDonnell Douglas Technical Services Co., 700 F.2d 260, 264-65 (5th Cir.1983); Jennings v. American Postal Workers Union, 672 F.2d 712, 715 (8th Cir.1982); Curry v. U.S. Postal Service, 36 F.E.P. Cases 1312, 1321-22 (D.Ohio 1984); University of Delaware, 29 F.E.P. Cases 943, 951-52 (D.Del.1982). These cases, however, do not afford support to Sinclair. He did not attempt to file a claim when he visited the EEOC office. He has variously described the purpose of his visit as "just to discuss what was happening to me and see what my rights might be," to "pick[ ] up information," and to "consult." Nowhere does he suggest that he wanted or intended to file a complaint on that day or that he was prevented from doing so by the EEOC. Moreover, Sinclair had legal counsel within the limitation period. The absence of an attorney is an important factor in cases permitting tolling on the basis of reliance on misinformation furnished by the EEOC. See McKee, 700 F.2d at 264 n. 7; Jennings, 672 F.2d at 715; see also Welty v. S.F. & G. Inc., 605 F.Supp. 1548, 1560-64 (D.Ala.1985).
 
 
 21
 AFFIRMED.