**Phillip T. OLSON, Plaintiff–Appellant,**

v.

**MOBIL OIL CORPORATION,**
**Defendant–Appellee.**

**No. 89–2349.**

United States Court of Appeals,
Fourth Circuit.

Argued Jan. 9, 1990.

Decided May 21, 1990.

Rehearing and Rehearing En Banc Denied
June 27, 1990.

Michael J. Kator (argued), William S. Aramony, Kator, Scott & Heller, Chtd., Washington, D.C., Alan Rosenblum, Rosenblum & Rosenblum, Alexandria, Va., on briefs, for plaintiff-appellant.

Gerald S. Hartman (argued), George M. MacDonald, Stanley R. Strauss, Vedder, Price, Kaufman, Kammholz & Day, Washington, D.C., Douglas S. Abel, Mobil Oil Corp., Fairfax, Va., on briefs for defendant-appellee.

Before PHILLIPS, MURNAGHAN, and WILKINSON, Circuit Judges.

WILKINSON, Circuit Judge:

The issue before us is whether the 180–day limitations period for filing a charge with the Equal Employment Opportunity Commission pursuant to the Age Discrimination in Employment Act may equitably be tolled because the employer allegedly concealed the fact that the complaining employee's position was not abolished during a corporate reorganization, but was filled by a younger man. The employee, Phillip Olson, argues that he could not have filed a notice of intent to sue with the EEOC for constructive discharge until he learned of this fact in August of 1987, approximately nine months after his last day on the job. We hold, however, that Olson was aware of sufficient facts within the limitations period to file a charge. The doctrine of equitable tolling does not apply merely because he later learned of additional information that appeared to make the alleged discrimination more obvious. We therefore affirm the judgment of the district court.

I.

Plaintiff Olson began his employment with Mobil Oil Corporation in 1967 as an industrial engineer. In 1986 he was working at the company's headquarters in Fairfax, Virginia, as a Plant Engineering Manager, an executive position in the Marketing Engineering Department, at salary grade 20. Olson was responsible for managing the design and construction of certain major projects for Mobil.

In early 1986, Mobil announced a reorganization of the Marketing Engineering Department. This restructuring was to promote economic efficiency and to relocate employees from two Mobil engineering centers that had recently closed. Olson was

told by his supervisor, Frank Nevins, that his job would be abolished and that four new salary grade 19 positions would be created—three construction manager positions and one design engineer position, all at the same level of responsibility. Olson was to retain his construction duties with the title of Construction Manager and no reduction in salary. His former job title and design responsibilities were to be assumed by Doug Heald, a Mobil employee who had been displaced by the closing of another Mobil facility. (When Heald later resigned, Olson was told that a Mobil employee returning from Saudi Arabia, Phil Del Vecchio, would take over Heald's position.) About two weeks later, Olson learned that the two new Construction Managers, Fred Baker (also a relocated employee) and Tom Milton, would probably absorb his construction responsibilities within a year. Olson knew that Baker, Milton and Heald were all younger than he.

In mid-April 1986 and again in September 1986, Nevins met with Olson to discuss the benefits Olson would receive if he took early retirement. Olson indicated that he was not going to retire because the award was not sufficient. Approximately a week later Nevins informed Olson that Mobil had decided not to fill the Construction Manager position it had originally offered him, and that his only options were to accept a salary grade 17 staff position or take early retirement. In late September, Olson elected early retirement to be effective April 1, 1987. In November, Nevins told Olson to clear out his desk and surrender his Mobil identification badges. Although Olson's salary continued until the April 1987 date, his last day on the job was November 19, 1986.

During a golf game with former Mobil colleagues in mid-August 1987, Olson learned that Phil Del Vecchio, a younger man, was performing Olson's former duties and responsibilities at a salary grade of 20. Olson contends that knowledge of this fact first led him to believe that he had an age discrimination claim against Mobil.

In October 1987, Olson filed a complaint of age discrimination in employment with the Fairfax County Human Rights Commission, which then cross-filed a complaint with the Equal Employment Opportunity Commission (EEOC). Olson filed this lawsuit on September 2, 1988, in the United States District Court for the Eastern District of Virginia alleging that Mobil had discriminated against him on the basis of his age and had constructively discharged him by pressuring him to take early retirement, all in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 *et seq.* Mobil denied discrimination and contended that Olson had failed to file a charge of age discrimination with the EEOC within 180 days of the date on which the alleged unlawful employment practice occurred. *See id.* § 626(d).

On February 15, 1989, after reviewing Olson's deposition, the district court granted Mobil's motion for summary judgment. The court held that Olson's cause of action had accrued on November 19, 1986, when he was unequivocally asked to leave Mobil, that he had not filed a timely charge of age discrimination with the EEOC, and that he had not presented facts warranting equitable tolling. This appeal followed.

## II.

■ The ADEA provides that no action based on a claim of age discrimination may be brought in federal court unless a charge shall be filed with the EEOC within 180 days of the alleged unlawful practice. 29 U.S.C. § 626(d). The 180–day limitations period for an ADEA action arising out of a job termination commences when the employee is informed of his termination, *see Price v. Litton Business Sys., Inc.,* 694 F.2d 963, 965 (4th Cir.1982), even if he is not then aware of its discriminatory nature. *Felty v. Graves–Humphreys Co.,* 785 F.2d 516, 518–19 (4th Cir.1986). However, the limitations period is not jurisdictional, *Vance v. Whirlpool Corp.,* 716 F.2d 1010, 1011–12 (4th Cir.1983), and may equitably be tolled if a plaintiff proves "that it would have been impossible for a reasonably prudent person to learn that his discharge was discriminatory." *Miller v. Int'l Tel. and Tel. Corp.,* 755 F.2d 20, 24 (2d Cir.1985).

Equitable tolling is a narrow limitations exception, however. Courts cannot countenance ad hoc litigation for every missed deadline. The repose that statutes of limitations provide will be lost if their applicability is "up for grabs" in every case. *English v. Pabst Brewing Co.*, 828 F.2d 1047, 1049 (4th Cir.1987). At some point, "the right to be free of stale claims ... comes to prevail over the right to prosecute them." *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 554, 94 S.Ct. 756, 761, 38 L.Ed.2d 713 (1974) (quoting *Order R.R. Telegraphers v. Ry. Express Agency*, 321 U.S. 342, 348–39, 64 S.Ct. 582, 586, 88 L.Ed. 788 (1944)). Over time, strict judicial adherence to limitations provisions may benefit plaintiffs because they will be encouraged to file timely claims rather than to rely on the application of uncertain exceptions which may be unevenly or arbitrarily administered.

Equitable tolling always has the potential of becoming the exception that swallows up the congressional rule. Thus we have held that the doctrine applies only when an employer's reliance on the applicable statute of limitations would be inequitable, because the employer "wrongfully deceived or misled the plaintiff in order to conceal the existence of a cause of action." *English*, 828 F.2d at 1049. The limitations period will not be tolled unless an employee's failure to timely file results from either a "deliberate design by the employer or actions that the employer should unmistakably have understood would cause the employee to delay filing his charge." *Price*, 694 F.2d at 965.

### A.

█ Olson contends that equitable tolling should apply here because Mobil concealed from him the "critical operative fact" that Phil Del Vecchio, a younger man, had been hired to fill his former position. Olson alleges that certain Mobil letters and organizational charts, dated prior to November 19, 1986, reveal Mobil's intent to replace him personally rather than simply to abolish his position, as it had represented. We cannot conclude, however, that this constitutes active concealment when Olson was aware of virtually all of the evidence of discrimination upon which he now relies.

Olson's awareness is relevant to equitable tolling for several reasons. First, it supports the conclusion that Mobil did not conceal the undisputed facts comprising the essence of Olson's claim. Secondly, Olson's awareness undercuts any argument that Mobil's alleged misconduct caused him to delay filing his claim or to suffer legal prejudice. Third, it hardly seems equitable to toll a limitations period when the employee concededly possessed the information needed to file a timely discrimination charge. The very basis for equitable tolling is "plaintiff's *unawareness* of the facts giving rise to the claim because of the defendant's intentional concealment of them." *Blumberg v. HCA Management Co.*, 848 F.2d 642, 644 (5th Cir.1988) (emphasis added). A plaintiff cannot claim he was "misled or prevented" from filing a timely charge where he "testified to his awareness" within the limitations period. *Miller*, 755 F.2d at 26.

Olson's awareness of the pertinent facts was unmistakable. During the last several months of his employment with Mobil, Olson perceived that his job responsibilities were being turned over to younger men. Olson noted in his complaint, for example, that the events which occurred in 1986 in connection with his employment at Mobil "contain[ed] the common element of [his] being demoted while younger employees either maintained their grades or were promoted." In March of 1986, Olson learned that his job title and a significant portion of his duties, including all of his design functions, were to be given to a man whom he knew to be in his early forties. Within two weeks, Olson learned that the remainder of his duties would be absorbed by two new Construction Managers, both of whom were younger men. Between March 10 and November 19, 1986 (Olson's last day at work), Mobil filled these two new construction manager jobs, an engineering service manager position, and a resale engineering manager position with younger individuals whom Olson believed lacked his qualifica-

tions. Similarly, when the position with Olson's old job title and design functions became available again in July or August 1986, Olson's supervisor refused his request to take over the duties he had previously performed. In September of 1986, Olson knew that if he remained with the company his only option was to accept demotion to a staff position at salary grade 17. By contrast, the three younger men who had taken over various parts of Olson's old job and job title were not demoted but retained their previous salary grades of 19.

To spin a plot of corporate concealment in the face of such abundant evidence not only strains credulity. It also ignores the absence of any triable issue on the critical element of plaintiff unawareness necessary for Olson to prevail on an equitable tolling claim. It is clear Olson believed that age was a factor in the way he had been treated on the job. He stated in his complaint that during this period his "working conditions became intolerable," that he was "subjected to discrimination" and that "it was made clear to [him] by his supervisor's actions and words that his services were not desired." He alleges, for example, that he was excluded from reorganizational planning meetings in which his younger replacements were participating. He was also replaced as venture manager of the "Atwood project," which Olson believed was the most important project for a construction manager, by one of the new, younger construction engineers. He testified that during this time he was told by his supervisor that he was not promotable, and that he began to feel increasing pressure to take early retirement. He further conceded in his deposition that early retirement is associated with age and that it would have been one way for Mobil to get rid of him. Olson stated in his complaint that his working conditions eventually became "so intolerable that [it] was clear to [him], *and would have been clear to any reasonable person,* that continued employment [with Mobil] was not possible" (emphasis added). A "plaintiff who is aware that [he] is being replaced in a position [he] believes [he] is able to handle by a person

outside the protected age group knows enough to support filing a claim." *Blumberg,* 848 F.2d at 645. Olson clearly falls into this category.

**B.**

Olson would apparently have us believe that, although he knew the above facts, he only interpreted them as evidence of age discrimination when he learned on the golf course after his retirement the critical fact that his old position was being filled by the younger Del Vecchio rather than being abolished as the company had represented to him. This court rejected a similar claim in *English v. Pabst Brewing Co.,* 828 F.2d 1047 (4th Cir.1987). There the plaintiff argued that the limitations period should equitably be tolled because the company gave him a pretextual reason for his termination and because his younger replacement was only hired five months later. This court denied equitable relief because it questioned, *inter alia,* plaintiff's assertion that the after-acquired fact of his replacement was of "critical significance" to his case. *Id.* at 1051.

We similarly reject Olson's contention that the fact of Del Vecchio's hiring was critical to his filing a charge. The function of a charge is "to initiate the EEOC investigation," *Graniteville Co. v. EEOC,* 438 F.2d 32, 38 (4th Cir.1971), of employer actions which the employee believes violated the ADEA. *See Vaught v. R.R. Donnelley & Sons Co.,* 745 F.2d 407, 411–12 (7th Cir.1984). It is not necessary to the filing of a charge that one possess a proven case. Here, Olson knew that his job title and significant portions of his job were being given to younger employees, that he had been passed over for promotions in favor of younger, less qualified employees, and that he was given the choice between demotion and early retirement. It is clear that Olson was aware of sufficient facts within the limitations period to file a charge alerting the EEOC that he "believ[ed] that [his] employer had violated the [ADEA]." *Pruet Prod. Co. v. Ayles,* 784 F.2d 1275, 1279 (5th Cir.1986) (quoting *EEOC v. Shell*

*Oil Co.,* 466 U.S. 54, 68, 104 S.Ct. 1621, 1631, 80 L.Ed.2d 41 (1984)).

Olson also knew as early as August of 1986 that Phil Del Vecchio was slated to take over his job title and the design portion of his job. Unlike the plaintiff in *English* whose replacement was not hired until five months after his termination, Olson conceded that he could have inquired of other Mobil employees who would have known Del Vecchio's age. Olson's later discovery that his job had been assumed by one younger person at salary grade 20 rather than being divided between three younger individuals at salary grades of 19 may be additional evidence, but it is "not necessary for a claimant to know all of the evidence" upon which he will ultimately rely at trial in order to file a charge with the EEOC. *Blumberg,* 848 F.2d at 645. We may presume that many facts will come to light after the date of an employee's termination, and indeed one purpose of a charge and a complaint is to initiate the process of uncovering them. It is sufficient that Olson was on notice at the moment of his alleged constructive termination "to inquire whether there was [a] discriminatory motive for the discharge." *Hamilton v. 1st Source Bank,* 895 F.2d 159, 164 (4th Cir.1990).

Finally, Olson makes much of the fact that Mobil claimed that his reassignment and demotion were part of a company reorganization which included integrating employees from two recently closed Mobil engineering facilities into the Fairfax, Virginia, center. Olson apparently regards this explanation as part of the company's plan of "active concealment" of the reasons or basis for its actions. Shorn of its pejorative rhetoric, this contention amounts to little more than a claim that the company's proffered reasons for its adverse employment action were pretextual. The fact that a company's explanation might be disputable for purposes of summary judgment on the underlying discrimination claim is not dispositive of the limitations issue, however. If equitable tolling applied every time an employer advanced a non-discriminatory reason for its employment decisions, it would be "tantamount to asserting that an employer is equitably estopped whenever it does not disclose a violation of the statute." *Blumberg,* 848 F.2d at 645. If this were the case, the 180-day period for filing a charge would have little meaning.

### III.

We conclude that appellant has not met his burden of showing that this is one of the rare situations where equitable tolling of the statutory limitations period for filing ADEA charges should apply.

The judgment of the district court is therefore

AFFIRMED.

MURNAGHAN, Circuit Judge, dissenting:

The majority is quite right in its conclusion that "the repose that statutes of limitations provide will be lost if their applicability is 'up for grabs' in every case." *Supra,* majority slip op. at 201. Precisely to avoid such a situation the Court in *English v. Pabst Brewing Co.,* 828 F.2d 1047 (4th Cir.1987), fashioned a test to be applied when determining whether the filing period should be equitably tolled.

In *English,* 828 F.2d at 1049, the Court found that "[t]o invoke equitable tolling the plaintiff must therefore show that the defendant attempted to mislead him and that the plaintiff reasonably relied on the misrepresentation by neglecting to file a timely charge." (Citations omitted.) The case decided today presents just the facts necessary to justify sending the question of equitable tolling of the 180-day limitation period to the jury. *See Vance v. Whirlpool Corp.,* 716 F.2d 1010, 1013 (4th Cir.1983) (proper for district court to submit question to jury of whether plaintiff filed his charge in timely manner); *Blumberg v. HCA Management Co., Inc.,* 848 F.2d 642, 644 (5th Cir.1988) (question of when plaintiff should have known age a factor in termination submitted to the jury).

I find the majority's conclusion that Mobil's acts did not constitute active concealment to be totally insupportable. All factu-

al disputes must be resolved in Olson's favor and all inferences to be drawn from the underlying facts must be viewed in the light most favorable to him. *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

It is largely undisputed, certainly at the summary stage the record establishes, that Mobil, through Frank Nevins, told Olson that his job as Manager, Plant Engineering was to be eliminated, divided up, split between himself and others. Mobil reorganization charts to which Olson was not privy, however, show the Manager, Plant Engineering position *at the SG 20* level to be filled by Heald with Olson being demoted to an SG 19. The record also contains a memo dated August 19, 1986 (after Heald resigned), stating quite clearly that "... we would like to offer P. Del Vecchio the position of Manager, Plant Engineering (S/G 20) with a return date to U.S. Marketing of around January 1, 1987." Yet, at *precisely* that time Olson was falsely told that Phil Del Vecchio would replace Heald at the SG 19 level and that nothing had changed in the proposed reorganization. While Mobil protests that it concealed nothing from Olson, the record is to the contrary and Mobil cites no record evidence to demonstrate the contention. The first part of the *English* test, active concealment by Mobil, is clearly shown.

Mobil, apparently conceding the futility of successfully winning the day on the active concealment issue, then argues that, even if it did conceal from Olson that his job would continue at the SG 20 level and indeed was promised to a younger man, those facts are immaterial. Mobil claims, and the majority accepts, that Olson knew enough in November 1986 to file a complaint. Thus, he could not reasonably have relied on Mobil's misrepresentations.

The majority concludes that Olson has not satisfied the burden of justifying equitable tolling since there were events that were or should have been apparent to Olson which were enough to have caused him to file a complaint on pain of a limitations bar for failing to do so. The events referred to include (1) Olson's knowledge that his job was to be divided up and absorbed by other, younger employees, who would be maintained in *their* same positions (SG 19), while Olson was *demoted* to SG 19; (2) the reassignment of an important project to a younger man, (3) his exclusion from organizational planning meetings of the reorganization, and (4) the refusal of Nevins to upgrade him and assign him jobs that Olson felt he was more qualified for that also went to younger people.

Certainly Olson knew of all the facts outlined in the majority opinion. Indeed, such facts may have made a suspicious person, one predisposed to litigation, rush to the EEOC and file a complaint. An analogy to tort law, however, is appropriate here: a tortfeasor takes the plaintiff as he finds him. Olson was a "company man," one not inclined to believe that the company which he had served successfully and loyally for almost twenty years was deliberately and surreptitiously trying to replace him merely on the basis of his age. Disenchantment on the part of Nevins, rather than age discrimination, appears a quite reasonable assumption. Olson thus "reasonably relied" on Mobil's misrepresentation in neglecting to file a timely charge. *English*, 828 F.2d at 1049. One in such circumstances is not to be compelled to be suspicious to the point of paranoia. The district court and the majority emphasize the slant Olson gave to events stated in the complaint filed with the district court. The later time when he filed the complaint is not, however, the moment his claim accrued. It is in November 1986 that Olson's knowledge must be examined, not an interpretation of events aided by his subsequent discovery of the truth.

For all of the allegedly obvious instances of discrimination, there were also legitimate business explanations by Mobil. It obviously intended to mislead and Olson should not pay a price for believing a long-time employer. Olson knew that he must share his former position with other younger engineers at a lower salary grade. Olson also understood that a massive reorganization at Mobil was taking place, that several plants were closing and engineers, most younger than he, needed to be relo-

cated. Though demoted, Olson did not lose salary. He had been demoted before through a reorganization which was rationally related to changing business needs. Indeed Olson was excluded from important planning meetings. However, another employee older than Olson, Jack Berry, was, until his retirement, included in the meetings. Olson was told Del Vecchio was to be placed in a SA 19 position, but did not know Del Vecchio or his age, only that he was returning from Saudi Arabia and had to be placed somewhere.

Though not particularly happy with those events, Olson testified in deposition that the proposed reorganization assignments "seemed to be appropriate to [employee] experience and past assignments." Olson also concluded that Nevins did not favor him and wanted him out. Yet Olson did not relate Nevins' attitude to age discrimination, attributing it rather to supervisory discretion. At the time Olson, relying on his previous experience with Mobil, should not necessarily have been expected to view these events as age discrimination. It was not until Olson discovered, contrary to Mobil's positive misrepresentations, that his job was still intact, occupied by a younger individual, that he suspected age discrimination. A jury could find, with reasonable support in the record, that a man in Olson's position reasonably relied on Mobil's misrepresentations in failing to file until that discovery of Mobil's lack of candor—indeed untruths—was made.

The majority considers the information that Del Vecchio was to have Olson's job at SG 20 as simply additional evidence, citing *Blumberg v. HCA Management Co., Inc.*, 848 F.2d 642, 645 (5th Cir.1988) ("not necessary for a claimant to know all of the evidence . . . to file a claim"). *Blumberg* is, however, distinguishable. The claimant there knew *at the time of her termination* that she was being replaced by a younger employee. Olson did not.

Certainly it is "not necessary to the filing of a charge that one possess a proven case." *Supra*, majority slip op. at 202. Nevertheless, in order to make out a *prima facie* case of age discrimination, a plaintiff must submit evidence to show "(1) the plaintiff is in the protected age group, (2) the plaintiff was discharged or demoted, (3) at the time . . . plaintiff was performing at a level that met his employer's legitimate expectations, and (4) following discharge the plaintiff was *replaced* by someone of comparable qualifications outside the protected class." *EEOC v. Western Electric Co., Inc.*, 713 F.2d 1011, 1014 (4th Cir.1983) (citations omitted) (emphasis added). Olson beyond dispute met the first three tests. As to the fourth, Olson did not know he had a basis to challenge the decision to demote him *until he discovered* his job was not abolished but given to a younger man outside the protected class. To deny equitable tolling here would be to reward Mobil for its success in concealing from Olson through the promulgation of untruths the factual basis of his *prima facie* case. Even accepting the position that the proper inquiry here is what Olson knew or should have known, the facts described show a genuine issue of material fact as to what a reasonable person in Olson's position before his discovery of the truth should have concluded about the actions of Mobil.

Additionally, there are important facts which distinguish Olson's case from that of the plaintiff denied equitable tolling in *English*. In *English* the court found that it was "doubtful that Lex was in fact a replacement for English at all." *English*, 828 F.2d at 1051. No such doubt about Del Vecchio as Olson's replacement exists here. Secondly, the plaintiff in *English* waited six *additional* months after learning of the supposed younger replacement to file his charge. Olson filed promptly upon learning that his job had not in fact been abolished. Third, in *English* "there has been no showing that [the employer] concealed or misrepresented anything about its own reorganization or about English's dismissal." *English*, 828 F.2d at 1050. The record evidence here shows, in spite of the majority's statement to the contrary, that Mobil did actively conceal its intention and misrepresent the reorganization to Olson.

Whether a man in Olson's position "reasonably relied" on Mobil's misrepresenta-

tions by neglecting to file is a material fact open to dispute. Summary judgment should, therefore, be precluded.

Accordingly, I respectfully dissent.