**Dan LENDO, Appellant,**

v.

**GARRETT COUNTY BOARD OF EDUCATION and Jerome J. Ryscavage and Luther D. Parrack, Jr., Principal, Southern Garrett County High School, Appellees.**

No. 86–3959.

United States Court of Appeals, Fourth Circuit.

Argued Jan. 5, 1987.

Decided June 19, 1987.

Harry Levy (Joshua R. Treem, Schulman & Treem, P.A., Baltimore, Md., on brief), for appellant.

Kenneth F. Spence, III (Gary C. Duvall, Miles & Stockbridge, Baltimore, Md., on brief), for appellees.

Before PHILLIPS and SPROUSE, Circuit Judges, and MERHIGE, Senior United States District Judge for the Eastern District of Virginia, sitting by designation.

SPROUSE, Circuit Judge:

Dan Lendo appeals from the district court's grant of summary judgment to the Garrett County (Maryland) Board of Education; James J. Ryscavage, Superintendent of the Garrett County school system; and Luther D. Parrack, Principal of Southern Garrett High School, in his § 1983 action.[1] In his complaint, Lendo alleged that the defendants retaliated against him by issuing or countenancing two "not effective" evaluations by Parrack in January 1981 and by denying him tenure in April 1981. The district court converted the Board's motion to dismiss into a motion for summary judgment and granted it. It con-

1. 42 U.S.C. § 1983.

cluded that Maryland's three-year statute of limitations began to run when Lendo received his second "not effective" evaluation on January 26, 1981, and held that his suit filed April 19, 1984 was therefore time-barred.[2] We disagree and reverse.

Lendo was hired by the Garrett County Board of Education for a two-year probationary period beginning with the 1979–80 school year. He taught driver's education at Southern Garrett High School and also coached the boys' football and girls' softball teams. In the spring of 1980, Lendo complained to the Board, Ryscavage, and Parrack about the inadequate facilities provided for girls' sports teams. He received no response. In November 1980, he wrote each of the three charging that the school's disparate treatment of females constituted a violation of Title IX of the Education Act Amendments of 1972.[3]

Lendo received two "not effective" evaluations from Parrack in January 1981. A January 12, 1981 evaluation concerned an incident that occurred while Lendo was coaching the boys' football team. Lendo appealed this evaluation on March 5, 1981, on the ground that his evaluation as a teacher should be limited to classroom performance. He eventually prevailed.[4] The second evaluation, on January 26, 1981, concerned a classroom incident involving a football player. Lendo apparently did not appeal this evaluation beyond the State Board of Education, which upheld its validity.

On April 13, 1981, Lendo petitioned the United States Department of Education to investigate his Title IX charges and whether he had been retaliated against for filing a grievance.[5] On April 22, 1981, the Board denied Lendo tenure based on Ryscavage's recommendation and the January evaluations. Lendo filed a charge with the Equal Employment Opportunity Commission on September 15, 1981 pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* He alleged that he had been discriminated against because of his sex and that he had been harassed and ultimately denied tenure in retaliation for his charges of Title IX violations.[6]

On April 19, 1984, Lendo filed a complaint against the Board, Ryscavage, and Parrack in the United States District Court for the District of Maryland. He alleged, *inter alia,* that the Board acted in retaliation for his Title IX grievances in violation of 42 U.S.C. § 1983 and the free speech clause of the first amendment. The defendants filed a motion to dismiss or, alternatively, for summary judgment. After a hearing, the district court granted the motion for summary judgment, holding that

---

**2.** Md.Cts. & Jud.Proc.Code Ann. § 5–101. Lendo's complaint contained four counts. Count 1 alleged that the Board violated 42 U.S.C. § 1983 and the free speech clause of the first amendment by retaliating against Lendo for his charges of Title IX violations. 20 U.S.C. § 1681 *et seq.* Count II alleged that the Board violated Title IX. Counts III and IV alleged pendent state claims of abusive discharge and breach of contract. The district court held Count I barred by the statute of limitations. It further held that Lendo had no private cause of action under Title IX because he was not a member of the special class protected by Title IX (females). *See Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975). The court therefore dismissed Count II and, since it had dismissed both federal claims, dismissed the two pendent state law claims. On appeal, the parties do not raise the *Cort v. Ash* issue and we do not address it. We consider only whether the statute of limitations barred Count I.

**3.** 20 U.S.C. § 1681 *et seq.*

**4.** Lendo appealed initially to the County Board of Education, then through the State Board of Education administrative process and the Maryland courts. *See Board of Education of Garrett County v. Lendo,* 295 Md. 55, 453 A.2d 1185 (1982).

**5.** The Office of Civil Rights of the Department of Education found that the school district did provide inadequate facilities for girls' sports teams, but was taking corrective measures. It also found that Lendo had not been retaliated against because he filed a grievance.

**6.** Lendo claimed that he had been discriminated against because he received a lower annual salary and less pay per game as coach of the girls' softball team than coaches of boys' teams. He also asserted that girls' coaches were not provided adequate facilities or funding. On February 24, 1983 the EEOC issued Lendo a right-to-sue letter after concluding there was not reasonable cause to believe his allegations of discrimination were true. Lendo did not file an action against the Board within 90 days. 42 U.S.C. § 2000e–5(f).

Lendo's § 1983 claim was barred by the statute of limitations. Lendo appeals from the grant of summary judgment.

The district court, in granting summary judgment to the Board, relied on the rationale of *Delaware State College v. Ricks*, 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980), and *Price v. Litton Business Systems, Inc.*, 694 F.2d 963 (4th Cir.1982). In *Ricks* the Supreme Court held that the applicable statute of limitations began to run when a college denied a professor tenure and notified him of the decision, not when its effects were felt. Ricks learned in March 1974 that he was denied tenure and immediately filed a grievance with the college. In June 1974, the college offered him a one-year terminal contract. The Court rejected Ricks' argument that the statute of limitations began to run either in September 1974, when his grievance was rejected, or in June 1975, when his employment actually was terminated. The Court reasoned that Ricks' termination in June 1975 was simply the effect of the allegedly discriminatory denial of tenure, which occurred in March 1974 and whose consequences were clearly known in June 1974 when the termination contract was offered. 449 U.S. at 258, 101 S.Ct. at 504. In *Price*, we applied the same reasoning to a demotion and subsequent termination of employment in an age discrimination context.[7] *Price*, 694 F.2d at 965.

The district court, in ruling that Lendo's § 1983 claim was time-barred, relied on the Supreme Court's rationale in *Ricks* and that of this court in *Price*. It reasoned that the Board's denial of tenure for Lendo was but the effect of the two "not effective" evaluations in January 1981. The court rejected Lendo's argument that the April 1981 denial of tenure was a separate and distinct retaliatory act, stating:

> [W]hatever he may now formally plead to attempt to circumvent his problem, it is clear that plaintiff's thrust throughout the various legal actions which he has instituted is that the giving of the poor evaluations by Parrack was the retaliatory action taken against him and that the effect of the allegedly discriminating evaluations was the denial of his tenure.

It is here that we disagree with the district court.

In our view, the two "not effective" evaluations and the denial of tenure are more properly considered two separate retaliatory acts than cause and effect. There is no question that the denial of tenure in April was related to the two "not effective" ratings of the previous January. Neither we, the district court, nor Lendo, however, could arrive at that conclusion except by hindsight. When Lendo received the January evaluations, he could not have known with any certainty that he would eventually be denied tenure. Assuming the Board's tenure procedures were conducted with any degree of fairness, it, too, could not have known before its April consideration whether it would deny Lendo tenure. In *Ricks*, the denial of tenure was the only discriminatory act alleged. When Ricks received notice of the tenure denial and the terminal contract, he knew his employment would be terminated. In *Price*, removal from his branch manager position was the only discriminatory act alleged. Again, Price knew that he had lost that position. In this case, however, Lendo alleged two distinct acts: the two "not effective" ratings and the denial of tenure. The Board may well have granted Lendo tenure despite the "not effective" ratings. In this ultimate sense, therefore, the denial of tenure was not an effect of the two previous negative evaluations, but a separate allegedly retaliatory act.

This case comes to us on the district court's grant of summary judgment. Lendo has alleged the defendants committed a retaliatory act in issuing or countenancing the negative evaluations in January 1981.

**7.** On February 5, 1980, Price was notified that he would be removed from his position as branch manager, although the company gave him the option of remaining in a lesser position. Price eventually went on terminal personal leave ending May 30, 1980. He filed an Age Discrimination in Employment Act claim against Litton on November 24, 1980, well beyond 180 days from February 5, 1980. The only discriminatory act he alleged in his complaint was his removal as branch manager. Relying on *Ricks*, this court held that Price's action was time-barred because the 180-day filing period began to run on February 5, 1980, when Price was notified of his removal.

He also has alleged that the Board committed a second separate and distinct retaliatory act when it denied him tenure on April 22, 1981. We hold that, while Lendo's first allegation is barred by the statute of limitations, the second is not. Of course, no facts have been developed on whether the denial of tenure was in fact retaliatory, but Lendo should have an opportunity to develop his contentions.

In short, we certainly recognize the vitality of the principle announced in *Ricks*, which we followed in *Price*, that continuing *effects* of a previous discriminatory act do not extend the running of the statute of limitations. The facts of this case, however, do not follow that pattern. The Board relied, in part, on the negative evaluations in making its tenure decision and, thus, the denial of tenure was related to the evaluations. It did not, however, inevitably follow the evaluations so as to be an effect of them as contemplated by *Ricks* and *Price*.

In view of the above, the district court's judgment dismissing Lendo's § 1983 claim is reversed and remanded for proceedings consistent with this opinion.

REVERSED AND REMANDED.