**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

A SOCIETY WITHOUT A NAME, FOR
PEOPLE WITHOUT A HOME,
MILLENNIUM FUTURE-PRESENT,

*Plaintiff-Appellant,*

v.

COMMONWEALTH OF VIRGINIA,
trading as Virginia Commonwealth
University; CITY OF RICHMOND,
VIRGINIA; HOMEWARD,

*Defendants-Appellees.*

No. 10-1437

Appeal from the United States District Court
for the Eastern District of Virginia, at Richmond.
Robert E. Payne, Senior District Judge.
(3:09-cv-00480-REP)

Argued: March 23, 2011

Decided: August 24, 2011

Before MOTZ and WYNN, Circuit Judges, and
Ronald Lee GILMAN, Senior Circuit Judge of the United
States Court of Appeals for the Sixth Circuit,
sitting by designation.

Affirmed by published opinion. Senior Judge Gilman wrote
the majority opinion. Judge Motz wrote a separate opinion

concurring in part and dissenting in part. Judge Wynn wrote a separate opinion concurring in part and dissenting in part.

---

**COUNSEL**

**ARGUED:** Henry Woods McLaughlin, III, LAW OFFICE OF HENRY MCLAUGHLIN, PC, Richmond, Virginia, for Appellant. Eric Blaine Martin, MCGUIREWOODS, LLP, Richmond, Virginia; Brian Kraig Telfair, CITY ATTORNEY'S OFFICE, Richmond, Virginia; Stephen Michael Hall, OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA, Richmond, Virginia, for Appellees. **ON BRIEF:** Kenneth T. Cuccinelli, II, Attorney General, Peter R. Messitt, Senior Assistant Attorney General, Wesley G. Russell, Jr., Deputy Attorney General, OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA, Richmond, Virginia, for Appellee Commonwealth of Virginia. Nicholas F. Simopoulos, CITY ATTORNEY'S OFFICE, Richmond, Virginia, for Appellee City of Richmond, Virginia. Christina M. Jones, Kenneth W. Abrams, MCGUIREWOODS, LLP, Richmond, Virginia, for Appellee Homeward.

---

**OPINION**

GILMAN, Senior Circuit Judge:

Plaintiff-Appellant A Society Without a Name, For People Without A Home Millennium Future-Present (ASWAN) is an unincorporated association made up of homeless and formerly homeless people that advocates for their rights. On February 17, 2009, ASWAN sued defendants-appellees Commonwealth of Virginia, doing business as Virginia Commonwealth University (VCU), City of Richmond (City), Homeward, a Virginia nonprofit corporation, and unidentified John Doe(s). It alleged that the defendants had conspired to

establish the Conrad Center on Oliver Hill Way, a site removed from Richmond's downtown community, for the purpose of reducing the presence of the homeless population in the downtown area by providing services for them in a remote location. The Conrad Center began operating on February 5, 2007.

ASWAN claimed that the relocation of homeless services to the Conrad Center violated 42 U.S.C. §§ 1983 and 1985(3), the Americans with Disabilities Act (ADA), the Equal Protection Clause of the Fourteenth Amendment, and the Fair Housing Act (FHA). The district court dismissed all of ASWAN's claims either because they failed to state a claim upon which relief can be granted or because they were barred by the applicable statute of limitations. For the reasons set forth below, we affirm.

## I.   Background

ASWAN filed suit in Virginia state court, but Homeward removed the action to federal court in accordance with 28 U.S.C. §§ 1441 and 1446. In its second amended complaint, ASWAN alleged that the Conrad Center is located about two miles from downtown Richmond; that this location is isolated and removed from Richmond's downtown community and VCU's campus; that the defendants took various actions to pressure organizations that provided services to the homeless in the downtown area, such as the Daily Planet, to relocate to the Conrad Center; that the defendants took these actions to make the homeless less visible to, and segregate them from, Richmond's downtown community and the VCU campus; that creating the Conrad Center on Oliver Hill Way makes it difficult for homeless people to travel between the Center and the downtown area, an area that includes open spaces such as Monroe Park located near VCU's campus; and that the efforts to make the homeless less visible have their roots in class, race, and disability prejudice. ASWAN contends there is a strong link between homelessness and disability, asserting

that the public generally perceives and regards homeless peo-ple as being disabled due to mental illness, alcoholism, and substance abuse.

In addition to claiming that the defendants' actions violated the ADA, the FHA, and 42 U.S.C. § 1985(3), ASWAN asserted that VCU retaliated against it in violation of the ADA for bringing this suit by withdrawing VCU's earlier promise to help pay the cost of transporting homeless people to and from the Conrad Center. ASWAN separately alleged that the City violated the Equal Protection Clause and 42 U.S.C. § 1983.

In response to ASWAN's complaint, all of the defendants filed motions to dismiss, arguing, among other things, that ASWAN's complaint failed to state a claim upon which relief can be granted and/or that the claims were barred by the applicable statute of limitations. The magistrate judge assigned to the case recommended that the motions be granted for the following reasons:

- ASWAN's conspiracy claim under 42 U.S.C. § 1985(3) should be dismissed "because it is comprised of conclusory allegations unsupported by concrete facts" and therefore fails to state a plausible conspiracy claim.

- ASWAN's ADA, FHA, equal-protection, and § 1983 claims should be dismissed because they fall outside the applicable statute of limitations.

- ASWAN's claim that VCU retaliated against ASWAN for bringing this suit in violation of the ADA should be dismissed because (1) ASWAN failed to allege the necessary elements of a retali-ation claim, and (2) VCU was not obligated to help pay the cost of transporting homeless people to and from the Conrad Center, so VCU's with-

drawal of its earlier promise to help pay these transportation costs, which occurred after ASWAN filed suit, does not amount to a discriminatory act or an adverse action.

The district court adopted the magistrate judge's Report and Recommendation in its entirety and dismissed ASWAN's lawsuit. ASWAN now appeals.

## II.   Analysis

### A.   Standard of review

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A court decides whether this standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer that "the defendant is liable for the misconduct alleged." *Id.* at 1949-50. In other words, the factual allegations (taken as true) must "permit the court to infer more than the mere possibility of misconduct." *Id.* at 1950.

Facts pled that are "merely consistent with" liability are not sufficient. *Id.* at 1949 (quoting *Twombly*, 550 U.S. at 557). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, [similarly] do not suffice," because "we are not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 1949-50 (internal quotation marks omitted).

In addition, where a conspiracy is alleged, the plaintiff must plead facts amounting to more than "parallel conduct and a bare assertion of conspiracy . . . . Without more, parallel

conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality." *Twombly*, 550 U.S. at 556-57 (reasoning that allegations of parallel conduct were insufficient to state a claim for a conspiracy under the Sherman Act). The factual allegations must plausibly suggest agreement, rather than being merely consistent with agreement. *Id.* at 557.

## B.   Conspiracy claim under § 1985(3)

The first issue on appeal is whether ASWAN's complaint stated a valid 42 U.S.C. § 1985(3) conspiracy claim. To state such a claim under 42 U.S.C. § 1985(3), a plaintiff must prove the following:

> (1) a conspiracy of two or more persons, (2) who are motivated by a specific class-based, invidiously discriminatory animus to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) and which results in injury to the plaintiff as (5) a consequence of an overt act committed by the defendants in connection with the conspiracy.

*Simmons v. Poe*, 47 F.3d 1370, 1376 (4th Cir. 1995). Moreover, the plaintiff "must show an agreement or a meeting of the minds by [the] defendants to violate the [plaintiff's] constitutional rights." *Id.* at 1377 (internal quotation marks omitted). "[W]e have specifically rejected section 1985 claims whenever the purported conspiracy is alleged in a merely conclusory manner, in the absence of concrete supporting facts." *Id.*

ASWAN alleges that a conspiracy has existed since at least 1995 to "segregate . . . homeless people and to reduce the visibility of black homeless people and ADA protected people and handicapped homeless people from Richmond's mainstream, its downtown," which includes VCU's main campus

and the surrounding majority-white neighborhoods. But on the required element of a conspiracy of two or more persons, the complaint alleges nothing more specific than statements that the "Doe(s) and the City entered into a conspiracy," that they had a "meeting of the minds that they would act in concert with VCU" to pressure the Daily Planet to relocate to Oliver Hill Way, and that "Homeward was created as part of the conspiracy and . . . became part of the conspiracy."

ASWAN's claim that the defendants conspired to force homeless people out of downtown Richmond by relocating homeless services to Oliver Hill Way fails because it is comprised almost entirely of conclusory allegations unsupported by concrete facts. For example, the allegations that "Doe(s) and the City entered into a conspiracy" and that "Homeward was created as part of the conspiracy and . . . became part of the conspiracy" are "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," and are therefore not sufficient to state a claim. *See Iqbal*, 129 S. Ct. at 1949-50.

As the magistrate judge found, "ASWAN fails to allege with any specificity the persons who agreed to the alleged conspiracy, the specific communications amongst the conspirators, or the manner in which any such communications were made." The allegations are thus insufficient to support a meeting of the minds by the defendants. At most, ASWAN's allegations amount to "parallel conduct and a bare assertion of a conspiracy." *See Twombly*, 550 U.S. at 556. This is not enough to survive a motion to dismiss.

## C.   ADA, § 1983, and equal-protection claims

The next issue is whether ASWAN's ADA, § 1983, and equal-protection claims are barred by the applicable statute of limitations. Answering this question requires that we first determine the limitations period for each type of claim.

Title II of the ADA does not contain a statute of limitations. Although "Congress enacted a catchall 4-year statute of limitations for actions arising under federal statutes enacted after December 1, 1990," *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 371 (2004) (citing 28 U.S.C. § 1658), the ADA was enacted on July 26, 1990, *see* 104 Stat. 327, 327. We therefore borrow the state statute of limitations that applies to the most analogous state-law claim. *See* 42 U.S.C. § 1988; *Wilson v. Garcia*, 471 U.S. 261, 266-67 (1985), *partially superseded by statute as stated in Jones*, 541 U.S. at 377-80.

The district court concluded that Virginia's one-year limitations period for claims under the Virginia Rights of Persons with Disabilities Act (hereafter, the Virginia Disabilities Act), Va. Code Ann. § 51.5-40 et seq., should apply to the ADA claims here, and the parties do not dispute this conclusion on appeal. *See Childress v. Clement*, 5 F. Supp. 2d 384, 388 (E.D. Va. 1998) (holding that the Virginia Disabilities Act constitutes the most analogous state statute of limitations for claims brought under the ADA).

This court has not previously determined what limitations period governs ADA claims brought in Virginia. But we have held that the Virginia Disabilities Act provides the limitations period for claims brought under the Federal Rehabilitation Act in Virginia because of the similarities between these acts. *Wolsky v. Med. Coll. of Hampton Roads*, 1 F.3d 222, 225 (4th Cir. 1993). And we have held that we apply the same substantive analysis to both the ADA and the Rehabilitation Act "[b]ecause the language of the two statutes is substantially the same." *Doe v. Univ. of Maryland Med. Sys. Corp.*, 50 F.3d 1261, 1264 n.9 (4th Cir. 1995). Moreover, the Virginia Disabilities Act itself expressly acknowledges its close connection to both the Rehabilitation Act and the ADA: "The Virginia Office for Protection and Advocacy shall promulgate such regulations as may be necessary to implement this section. Such regulations shall be consistent, whenever applicable, with regulations imposed under the federal Rehabilitation

Act of 1973, as amended, and the federal Americans with Disabilities Act of 1990." Va. Code Ann. § 51.5-40 (footnotes omitted). We therefore agree with the district court's conclusion that the one-year limitations period in the Virginia Disabilities Act applies to ADA claims brought in Virginia.

With regard to the § 1983 and equal-protection claims, the statute-of-limitations period for both is two years. *Lewis v. Richmond City Police Dept.*, 947 F.2d 733, 735 (4th Cir. 1991) (§ 1983 claims); *Al-Amin v. Shear*, 325 F. App'x 190, 193 n.2 (4th Cir. 2009) (equal-protection claims). The parties do not dispute this conclusion.

The applicable statute of limitations begins to run once a claim accrues, and federal law controls that determination. *Cox v. Stanton*, 529 F.2d 47, 50 (4th Cir. 1975). A civil rights claim accrues when the plaintiff "knows or has reason to know of the injury which is the basis of the action." *Id.* At the very latest, ASWAN knew or should have known of its purported injury stemming from the alleged conspiracy to relocate homeless services from downtown to Oliver Hill Way when the Conrad Center opened on February 5, 2007. So even for the claims with a two-year limitations period, ASWAN's suit should have been filed no later than February 5, 2009. Because ASWAN's complaint was not filed until February 17, 2009, those claims are time barred.

ASWAN attempts to avoid this result by claiming that certain acts of the defendants constituted a continuing violation of the ADA. "In general, to establish a continuing violation[,] the plaintiff must establish that the unconstitutional or illegal act was a fixed and continuing practice." *Nat'l Adver. Co. v. City of Raleigh*, 947 F.2d 1158, 1166 (4th Cir. 1991) (brackets, ellipses, and internal quotation marks omitted). In other words, if the plaintiff can show that the illegal act did not occur just once, but rather "in a series of separate acts[,] and if the same alleged violation was committed at the time of each act, then the limitations period begins anew with each

violation." *Id.* at 1167 (internal quotation marks omitted). But continual unlawful acts are distinguishable from the continuing ill effects of an original violation because the latter do not constitute a continuing violation. *Id.* at 1166.

ASWAN claims that the following actions constitute a continuing violation of the ADA: (1) VCU's withdrawal of its promise to help pay the cost of transporting homeless people to and from the Conrad Center, which withdrawal was allegedly made in retaliation for ASWAN's filing the present lawsuit; (2) the attempt by VCU and Homeward in 2009 to persuade various organizations to relocate feeding programs from Monroe Park to the Conrad Center; and (3) the City's communication to homeless people in 2009 that they would need to travel to the Conrad Center to sign up for the downtown overnight shelter.

The first action does not establish a continuing violation because it is an allegation of an entirely new violation—a retaliation claim instead of a discrimination claim. *See id.* at 1167 (concluding that a continuing violation requires that "the same alleged violation was committed at the time of each act" (internal quotation marks omitted)). And the second and third actions essentially deal with decisions to add new services for the homeless at the Conrad Center. The fact that the Conrad Center is still located on Oliver Hill Way and continues to offer services to the homeless—including new services that are added from time to time—does not amount to a continuing violation, but rather amounts to the continuing effect of the original decision to locate the Conrad Center on Oliver Hill Way. *See Jersey Heights Neighborhood Ass'n v. Glendening*, 174 F.3d 180, 189 (4th Cir. 1999) ("At bottom, appellants' continuing violation argument rests on the alleged ongoing effects of the original decision to locate the highway in proximity to Jersey Heights.") ASWAN's ADA, § 1983, and equal-protection claims are therefore time barred.

**D.  FHA claims**

We will now address whether the district court erred in dismissing ASWAN's FHA claims. The district court determined that ASWAN's FHA claims, which have a two-year statute of limitations, *see* 42 U.S.C. § 3613(a)(1)(A), were also time barred because ASWAN filed suit more than two years after the opening of the Conrad Center.

ASWAN responds by arguing that the accrual date for its FHA claims is not the opening of the Conrad Center in February 2007, but rather when the Center first offered intake services to the homeless that allowed them to sign up for the overnight shelter that continued to be located downtown. This took place in April 2007. ASWAN alleges that the relocation of the intake services violated the FHA by running afoul of the statutory sections that prohibit discrimination in the provision of housing services. *See* 42 U.S.C. § 3604(b), (f)(2). Similarly, ASWAN contends that the FHA was violated by the City's communication to homeless people in 2009 that they would need to travel to the Conrad Center to sign up for the downtown overnight shelter using the intake services.

There are two problems with ASWAN's argument. One is that the time gap between the opening of the Conrad Center and the actions complained of is not material because ASWAN knew or should have known that intake services were going to be shifted there from the very conception of the Center. In other words, the relocation of intake services is simply another continuing effect of the original decision to locate the Conrad Center on Oliver Hill Way. Indeed, ASWAN admits as much by arguing in its own brief that if the defendants had not conspired to establish the Conrad Center on Oliver Hill Way, then "there would have been no Conrad Center on Oliver Hill Way to receive relocation of the [intake services] and the City's processing of applications for access to overflow shelter downtown on very cold nights."

The other problem with ASWAN's argument is that the intake services to sign up for overnight shelter do not constitute "services" within the meaning of the FHA. As explained by this court in *Jersey Heights*:

> The Fair Housing Act's services provision simply requires that "such things as garbage collection and other services of the kind usually provided by municipalities" not be denied on a discriminatory basis. [*Mackey v. Nationwide Ins. Cos.*, 724 F.2d 419, 424 (4th Cir. 1984).] It does not extend to every activity having any conceivable effect on neighborhood residents. *See id.* (hazard insurance is not a "service"); *Clifton Terrace Assocs., Ltd. v. United Techs. Corp.*, 929 F.2d 714, 720 (D.C. Cir. 1991) (elevator manufacturer is not a provider of "services"); *Southend Neighborhood Improvement Ass'n [v. St. Clair County*, 743 F.2d 1207, 1210 (7th Cir. 1984)] (maintenance of county-owned neighborhood property is not a "service"); *Laramore v. Illinois Sports Facilities Auth.*, 722 F. Supp. 443, 452 (N.D. Ill. 1989) (stadium site selection is not the provision of a "service"). "To say that every discriminatory municipal policy is prohibited by the Fair Housing Act would be to expand that Act to a civil rights statute of general applicability rather than one dealing with the specific problems of fair housing opportunities." *Clifton Terrace Assocs.*, 929 F.2d at 720 (quoting *Vercher v. Harrisburg Housing Auth.*, 454 F. Supp. 423, 424 (M.D. Pa. 1978)).

Although *Jersey Heights* dealt with the meaning of "services" in 42 U.S.C. § 3604(b), the term has the same meaning in § 3604(f)(2) because the relevant language is materially the same. *Compare* 42 U.S.C. § 3604(b) *with* 42 U.S.C. § 3604(f)(2); *see also Smith v. Pac. Prop. and Dev. Corp.*, 358 F.3d 1097, 1103 (9th Cir. 2004) (concluding that the language of § 3604(f)(2), which governs discrimination based on

handicap, is otherwise materially identical to § 3604(b), which governs discrimination based on race, color, religion, sex, familial status, or national origin).

Intake services to sign up for a homeless shelter are simply not within the type of services covered by the FHA because they are unlike "services generally provided by governmental units such as police and fire protection or garbage collection." *See Southend*, 743 F.2d at 1210. Indeed, in the present case, the intake services are provided by Catholic Charities, a non-profit organization, and not by any governmental unit. Because the intake services in question do not fall within the ambit of the FHA, ASWAN's FHA claims are barred by the two-year statute of limitations and, more fundamentally, they fail to state a claim upon which relief can be granted.

## E.   Retaliation claim under the ADA

The final issue on appeal is whether the district court erred in dismissing ASWAN's ADA retaliation claim against VCU. ASWAN contends that VCU retaliated against ASWAN by retracting VCU's earlier promise to help pay the cost of transporting homeless people to and from the Conrad Center.

The ADA's retaliation provision provides, in relevant part, that "[n]o person shall discriminate against any individual because such individual . . . made a charge . . . under this Chapter." 42 U.S.C. § 12203(a). To establish a prima facie retaliation claim under the ADA, plaintiffs must allege (1) that they engaged in protected conduct, (2) that they suffered an adverse action, and (3) that a causal link exists between the protected conduct and the adverse action. *Rhoads v. F.D.I.C.*, 257 F.3d 373, 392 (4th Cir. 2001). ASWAN argues that it satisfies this test because (1) its ADA claims against VCU in this lawsuit constitute protected conduct, (2) VCU's withdrawal of its earlier promise to help pay the cost of transporting homeless people constitutes an adverse action against ASWAN and

its members, and (3) the reason for VCU's reversal was to retaliate against ASWAN for bringing this lawsuit.

As ASWAN admits, however, VCU was under no obligation to help pay the cost of transporting homeless people to and from the Conrad Center. And retracting a gratuitous promise does not amount to a discriminatory act or an adverse action. *See Stiltner v. Beretta U.S.A. Corp.*, 74 F.3d 1473, 1482-84 (4th Cir. 1996) (en banc) (holding that the employer's revocation of gratuitous healthcare benefits did not violate ERISA's anti-retaliation provision). Although *Stiltner* involves ERISA's anti-retaliation provision (29 U.S.C. § 1140), that provision and the ADA's retaliation provision (42 U.S.C. § 12203(a)) use the identical phrase—"discriminate against"—to describe what constitutes an adverse action, and *Stiltner* expressly held that revoking a gratuitous benefit does not fit within this language. *Id.*

Because VCU's alleged promise to help pay the cost of transporting homeless people to and from the Conrad Center is gratuitous, VCU's retraction of this promise does not amount to an adverse action. We therefore conclude that the district court properly dismissed ASWAN's ADA retaliation claim against VCU.

### III.   Conclusion

For all of the reason set forth above, we affirm the judgment of the district court.

*AFFIRMED*

DIANA GRIBBON MOTZ, Circuit Judge, concurring in part and dissenting in part:

I concur in Judge Gilman's opinion with one exception. In my view, the text of the ADA and controlling precedent require the conclusion that ASWAN has alleged a cognizable

ADA retaliation claim against VCU. ASWAN may not be able to prove this claim, but it should have been afforded the opportunity to do so. My colleagues err in affirming the district court's dismissal of this claim.

I.

On February 17, 2009, ASWAN filed its first complaint in state court. After defendants removed the case to federal court and filed motions to dismiss, the district judge denied the motions without prejudice but ordered ASWAN to clarify the complaint in separately numbered counts identifying the "specific statute alleged to have been violated."

On November 19, 2009, ASWAN filed its second amended complaint and in it alleges a retaliation claim against VCU in separately numbered counts and identifies the ADA as the source of this cause of action. Specifically, ASWAN alleges that sometime in 2008 or 2009, the Daily Planet (an affiliate of ASWAN) acquired a passenger van to transport homeless people from downtown to the Conrad Center; many of these homeless people were disabled. ASWAN alleges that VCU agreed to "provide some funding to the Daily Planet" to offset a portion of these transportation costs. ASWAN further alleges that after it filed its original complaint in February 2009, VCU retracted its "agreement" with the Daily Planet in order to "punish" ASWAN by (1) "depriving its members . . . of the benefit of transportation"; and (2) "showing" ASWAN that "its decision to file a civil rights lawsuit against VCU had backfired, hurting the very homeless people" ASWAN seeks to serve.

II.

The ADA provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by [the ADA]." 42 U.S.C. § 12203(a). To state an ADA retaliation claim, ASWAN must

allege that (1) it engaged in protected conduct, (2) suffered an adverse action, and (3) a causal link exists between the protected conduct and the adverse action. *Rhoads v. F.D.I.C.*, 257 F.3d 373, 392 (4th Cir. 2001).

VCU does not maintain that it arrived at its decision not to provide funding for transportation to the Conrad Center independent from this lawsuit. Rather, VCU conceded at oral argument that there was a "causal link" between its decision not to honor the transportation funding agreement and the filing of this lawsuit by ASWAN. *See also Hunt-Golliday v. Metro. Water Reclamation Dist. of Greater Chi.*, 104 F.3d 1004, 1011 (7th Cir. 1997) (holding "suspicious timing" as "circumstantial" evidence to support retaliation claim). VCU maintains, however, that this causal link does not provide the basis for an ADA retaliation claim.

VCU's principal contention on appeal is that ASWAN lacked any "reasonable, good faith belief" that VCU violated the ADA and that ASWAN's lawsuit therefore did not constitute the sort of activity protected by the ADA. As a fallback position, VCU asserts that its agreement to fund transportation to the Daily Planet constitutes a gratuitous benefit and so its decision to withdraw this benefit cannot amount to unlawful retaliation.

Given that the majority relies on VCU's fallback position, I first address that argument and then VCU's principal argument on this point.

### III.

Five years ago, in the Title VII context, the Supreme Court interpreted precisely the same language as that at issue here—"discriminated against"—and held that it "refers to distinctions or differences in treatment that injure protected individuals." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 59 (2006). The Court explained that Congress intended this

broad language to "prevent[ ]" a public entity from "interfering . . . with . . . efforts to secure or advance enforcement of the" underlying statute. *Id.* at 63. The retaliation must merely be "materially adverse" to a reasonable person, i.e. sufficient to "dissuade[ ] a reasonable [person] from" charging discrimination. *Id.* at 68 (internal quotation omitted). Ultimately, "[c]ontext matters," making discovery particularly appropriate to flesh out factually plausible allegations. *Id.* at 69.

Faithfully applying these principles seems to me to require the conclusion that ASWAN has alleged a clear case of ADA-barred retaliation. Revoking funding for transportation represents a "materially adverse" action that could dissuade a reasonable disabled homeless person from asserting his or her rights under the ADA.

Our holding in *Stiltner v. Beretta U.S.A. Corp.*, 74 F.3d 1473, 1484 (4th Cir. 1996) (en banc), that revocation of gratuitous benefits fails to qualify as an adverse action for purposes of ERISA's retaliation provision, does not counsel a different result. In *Stiltner*, we explained that Congress modeled ERISA's retaliation provision on parallel language in the National Labor Relations Act (NLRA), and so we looked to the NLRA to determine the meaning of that language. *Id.* at 1482-84. It was this NLRA-focused inquiry that led us to conclude that revoking gratuitous benefits does not constitute adverse action for purposes of ERISA. *Id.* But that holding, which we based on the labor-specific statutory context that confronted us, provides little guidance here.

In interpreting the ADA, we must look not to unrelated labor statutes, but to Title VII of the Civil Rights Act. *See A Helping Hand, LLC v. Baltimore County, MD*, 515 F.3d 356, 362 (4th Cir. 2008). Given that the ADA's anti-retaliation provision is identical to Title VII's, the standard laid out by the Supreme Court for purposes of Title VII controls in this ADA case.*  *See Penny v. United Parcel Service*, 128 F.3d

---

*That Title VII generally governs *employment* discrimination does not render the Title VII standard any less applicable. The Supreme Court has

408, 417 (6th Cir. 1997); *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1287 (11th Cir. 1997). And under that standard, the retraction of gratuitous benefits constitutes adverse action. *See Thompson v. Potomac Electric Power Co.*, 312 F.3d 645, 650-51 (4th Cir. 2002) (noting that Title VII retaliation encompasses "any retaliatory act" that "adversely affected . . . benefits" (internal quotation omitted)); *see also Morales-Vallellanes v. Potter*, 605 F.3d 27, 36 (1st Cir. 2010) (noting that Title VII "adverse employment actions" include the imposition of "a less distinguished title" or "a material loss in benefits" (internal quotation omitted)); *Passer v. Am. Chem. Soc.*, 935 F.2d 322, 331 (D.C. Cir. 1991) (rejecting argument that cancellation of a voluntary symposium was the withdrawal of a "mere 'gratuity'" and thus incapable of constituting retaliation).

## IV.

Perhaps recognizing that its fallback argument lacks any doctrinal support, VCU principally argues that ASWAN's retaliation claim fails because ASWAN assertedly had no "reasonable, good faith belief" that the ADA had been violated. *Freilich v. Upper Chesapeake Health, Inc.*, 313 F.3d 205, 216 (4th Cir. 2002). Specifically, VCU contends that ASWAN could *not* have reasonably believed that "[1] a hill is a 'barrier' under the ADA; [2] filing this suit years later could prevail; [3] a donor of land can be treated like a segregating zoning authority; or [4] segregating someone from 'the

specifically rejected the argument that the unique context of employment animates Title VII's antiretaliation provision. *See Burlington Northern*, 548 U.S. at 64-67. Instead, the Court has broadly construed that provision to encompass retaliation outside of the workplace, recognizing that the "primary purpose" of that provision is not to address *employment* discrimination *per se*, but instead to "maintain[ ] unfettered access to statutory remedial mechanisms." *Id.* at 64 (internal quotation and brackets omitted). It is this concern—protecting access to a civil rights remedial mechanism—that demands we give the ADA the same broad construction.

downtown mainstream' segregates them because of a disability." Appellee's Br. at 14. Each of these contentions fail.

First, governing regulations clearly prohibit public entities from "mak[ing] selections" for "determining the site or location of a facility" that "have the effect of excluding" the disabled. 28 C.F.R. § 35.130(b)(4). Thus, ASWAN could reasonably believe that selecting a hill for the location of a facility frequented by a substantial disabled population violates this regulation.

Second, limitations is an affirmative defense that a defendant, not a plaintiff, must prove; ASWAN opposed an "act or practice made unlawful" by the ADA, which limitations does not necessarily bar. Moreover, no case law exists assessing whether a clearly meritorious affirmative defense negates a "reasonable, good faith belief" of an "act or practice made unlawful" by the ADA. Further, no appellate court had even settled the question of which statute of limitations applies in Virginia, making it hard for ASWAN to "reasonably believe" its claims time-barred given that the ADA itself does not prescribe a limitations period.

Third, a public entity that donates land may well be treated as a segregating zoning authority because the regulations prohibit "*a public entity*, in providing *any* aid, benefit, or service . . . directly or through contractual, licensing, or other arrangements," from denying a disabled person access to the benefit. 28 C.F.R. § 35.130(b)(1)(i)-(vii) (emphasis added).

Finally, the governing regulations also provide that a public entity may not "subject[ ]" a disabled person to "discrimination," including segregationist policies. 28 C.F.R. § 35.130(a); *see also* § 35.130(d) ("A public entity shall administer services . . . in the most integrated setting appropriate to the needs of [the disabled]."); *Olmstead v. L.C.*, 527 U.S. 581, 588-89 (1999) (Congress specifically identified "segregation" of the disabled as a problem addressed by the ADA).

V.

In sum, I believe ASWAN has pled allegations sufficient to state an ADA retaliation claim. Accordingly, I would reverse the contrary judgment of the district court as to that claim.

WYNN, Circuit Judge, concurring in part and dissenting in part:

Like Judge Motz, I join Judge Gilman's conclusion that the conspiracy claim was properly dismissed because an agreement was not sufficiently alleged. I also join Judge Gilman's conclusion that the retaliation claim was properly dismissed because Virginia Commonwealth University's ("VCU") alleged promise to provide transportation was merely gratuitous. However, I disagree with Judge Gilman's and Judge Motz's conclusion that A Society Without A Name's ("ASWAN") claims under the Fair Housing Act ("FHA"), Americans With Disabilities Act ("ADA"), Equal Protection Clause, and 42 U.S.C. § 1983 accrued when the Conrad Center opened and that subsequent acts alleged in the Second Amended Complaint do not constitute continuing violations.[1] Because I conclude that ASWAN plausibly alleged continuing violations against Homeward, VCU, and the City of Richmond, I must respectfully dissent in part.

The majority opinion correctly observes that ASWAN's FHA, equal protection and § 1983 claims are subject to a two-year limitations period, and its ADA claims are subject to a one-year statute of limitations. 42 U.S.C. § 3613(a) (FHA); *Al-Amin v. Shear*, 325 F. App'x 190, 193 (4th Cir. 2009) (unpublished) (equal protection and § 1983 claims); *Wolsky v. Med. Coll. of Hampton Roads*, 1 F.3d 222, 223 (4th Cir. 1993) (ADA). When considering whether a continuing violation is alleged, however, "The Supreme Court has 'stressed

---

[1] For convenience, I hereafter refer to this particular conclusion as "the majority opinion."

the need to identify with care the specific [discriminatory] practice that is at issue.'" *Garcia v. Brockway*, 526 F.3d 456, 462 (9th Cir. 2008) (en banc) (quoting *Ledbetter v. Goodyear Tire & Rubber Co.*, 550 U.S. 618, 624 (2007)); *see also Havens Realty Corp. v. Coleman*, 455 U.S. 363, 380 (1982) (focusing on "the continuing nature of the alleged violation"); *Nat'l Adver. Co. v. City of Raleigh*, 947 F.2d 1158, 1168 (4th Cir. 1991) (examining the "nature of the wrongful conduct and harm alleged") (quotation marks omitted). Here, ASWAN alleges at length in its ninety-five-page Second Amended Complaint that the defendants have engaged, since at least the early 1990s, in a series of calculated and discriminatory acts designed to isolate homeless persons from Richmond's downtown, mainstream community.[2] ASWAN alleges that the

---

[2] I give here only a brief summary of the exhaustive and detailed allegations of historical facts (many of which are substantiated by documents in the Joint Appendix) leading to the recent isolation efforts that are the gravamen of the Second Amended Complaint. ASWAN alleges that through most of the '80s and '90s, the Daily Planet provided overnight shelter, daytime residency, meals, and employment assistance services to Richmond's homeless population at the Street Center, which was located on West Canal Street downtown. ASWAN further alleges that: In 1993, the City of Richmond sold the West Canal Street location and promised to assist in finding a new site for the Street Center. The Daily Planet settled on a site on West Grace Street "in Richmond's mainstream near VCU's campus." Despite a substantial grant from the United States Department of Housing and Urban Development to purchase and develop the West Grace Street site, the Daily Planet did not pursue the site because VCU and the City threatened to curtail financial support. VCU and the City concertedly dissuaded the Daily Planet from pursuing other locations, including the City's restrictive zoning ordinances, which became the subject of a 1997 lawsuit. VCU and the City persistently urged the Daily Planet to relocate its services for the homeless on 17th Street (later renamed Oliver Hill Way). In 1997, the City adopted the Downtown Plan, which stated a policy of relocating services for homeless and other defined "street persons" away from downtown. Because of the Daily Planet's unwillingness to accept the Oliver Hill Way location, the defendants allegedly propositioned Freedom House, another provider of homeless services in Richmond. Freedom House accepted the proposal, leased the Oliver Hill Way site from VCU, obtained from the City a special use permit to build a homeless shelter, and opened the doors of the Conrad Center on February 5, 2007.

defendants have only recently achieved this discriminatory isolation, essentially by two means: first, by the siting and construction of the Conrad Center in an allegedly remote location; and second, by the piecemeal relocation of services for homeless persons from the downtown community to the Conrad Center. *See, e.g.*, *Familystyle of St. Paul, Inc. v. City of St. Paul, Minn.*, 923 F.2d 91, 93-94 (8th Cir. 1991) (upholding city ordinance tending to integrate and refusing to "agree that Congress intended the Fair Housing Amendment Act of 1988 to contribute to the segregation of the mentally ill from the mainstream of our society"); *see also Human Res. Research & Mgmt. Grp., Inc. v. Cnty. of Suffolk*, 687 F. Supp. 2d 237, 253-54 (E.D.N.Y. 2010) (citing *Bryant Woods Inn, Inc. v. Howard Cnty., Md.*, 911 F. Supp. 918, 946 (D. Md. 1996)).

The Second Amended Complaint alleges that the systematic relocation of services—not the siting, construction or opening of the Conrad Center—is the practice that is causing homeless persons to be isolated from downtown Richmond. Therefore, I cannot join the view of the Magistrate Judge and the majority opinion that "ASWAN knew or should have known of its purported injury stemming from the alleged conspiracy to relocate homeless services from downtown to Oliver Hill Way when the Conrad Center opened on February 5, 2007." *Ante* at 9.

Certainly, ASWAN suffered no discriminatory treatment by the mere construction or opening of the Conrad Center if its members could continue to receive needed services in the downtown, mainstream community. Rather, it is the relocation of those services, allegedly with the discriminatory motive of isolating homeless persons from downtown, that is the actionable injury. *Cf. Frame v. City of Arlington*, 616 F.3d 476, 489 (5th Cir. 2010) (in action alleging that city's impassable, and thus ADA noncompliant, sidewalks and pathways inhibited access by disabled persons to city's services, programs or activities, statute of limitations ran from date plain-

tiff knew she was denied access to program, service or activity, not date pathway was constructed), *reh'g en banc granted*, 632 F.3d 177 (2011); *Fair Housing Council, Inc. v. Village of Olde St. Andrews, Inc.*, 210 F. App'x 469, 480 (6th Cir. 2006) (in FHA inaccessibility case, statute of limitations runs from date plaintiff attempts to rent or buy the inaccessible unit, not the date it was built).

Accordingly, the majority errs by holding that ASWAN's claims accrued on the date the Conrad Center opened and by dismissing the subsequent relocation of services to the Conrad Center as mere effects of its opening. As this Court has previously explained:

> If the discrimination alleged is a single act, the statute begins to run at the time of the act. If, on the other hand, the statutory violation does not occur at a single moment but in a series of separate acts and if the same alleged violation was committed at the time of each act, then the limitations period begins anew with each violation and only those violations preceding the filing of the complaint by the full limitations period are foreclosed.

*Nat'l Adver. Co. v. City of Raleigh*, 947 F.2d 1158, 1167 (4th Cir. 1991). The limit to this rule is that subsequent effects from an earlier discriminatory act do not begin the limitations period anew; rather, "[t]he challenged action must be repeated within the statute of limitations period." *Id.*; *see also Jersey Heights Neighborhood Ass'n v. Glendening*, 174 F.3d 180, 189 (4th Cir. 1999) (where location of highway was alleged discriminatory act, post-construction refusals to reconsider location or to mitigate impact of highway on neighborhood were mere effects of original alleged violation); *Moseke v. Miller & Smith, Inc.*, 202 F. Supp. 2d 492, 507-08 (E.D. Va. 2002) (where plaintiffs alleged that condominiums did not comply with FHA, continued existence of noncompliant fea-

tures were mere effects of original noncompliant construction).

To make out a continuing violation, ASWAN must therefore allege a discrete act of discrimination—related to the larger asserted isolation effort—that occurred within the applicable limitations period. *Glendening*, 174 F.3d at 189. ASWAN has done so in this case by alleging that discrete acts of the defendants between 2007 and 2009 caused in piecemeal fashion the isolation of homeless persons from downtown Richmond.

Instructive on this point is *Lendo v. Garrett County Board of Education*, 820 F.2d 1365, 1367 (4th Cir. 1987), where this Court found no cause and effect relationship between allegedly discriminatory evaluations of a teacher's performance and his subsequent denial of tenure. The Court rejected the characterization of the tenure denial as a mere effect of the earlier discriminatory performance evaluations; the tenure denial and performance evaluations were alleged as discrete acts of discrimination. *Id.* Although the evaluations and the denial of tenure were related, the teacher "could not have known with any degree of certainty [at the time of the evaluations] that he would eventually be denied tenure." *Id.* Thus, the teacher was entitled "to develop his contentions" on the discrete denial-of-tenure claim, which accrued within the limitations period. *Id.* at 1368.

Similarly, in this case, the opening of the Conrad Center is related to the relocation of services there only insofar as the location of the Conrad Center has enabled the isolation of homeless persons from downtown Richmond. As demonstrated by *Lendo*, however, this relationship does not mean that the relocation of a service to the Conrad Center—allegedly motivated by isolationist animus—is not a discrete act of discrimination. Indeed, the opening of the Conrad Center in no sense caused homeless persons to be isolated from downtown Richmond. Rather, defendants' alleged acts

that caused services to relocate from downtown to the Conrad Center are responsible for the alleged isolation. *See Lendo*, 820 F.2d at 1368 (the denial of tenure did not "inevitably follow the [discriminatory] evaluations so as to be an effect of them"). Any such discrete acts during the limitations period are not time-barred. *Nat'l Adver. Co.*, 947 F.2d at 1167.

ASWAN plausibly alleges that the City of Richmond, Homeward, and VCU in April 2007 "pressured and encouraged Commonwealth Catholic Charities to locate at the Conrad Center on Oliver Hill Way a service called 'Central Intake' for homeless people to sign up for and be processed to obtain overnight shelter provided at local churches by CARITAS." *Joint Appendix* at 294, 307, 327. ASWAN alleges that Central Intake was previously located at "517 West Grace Street in Richmond's mainstream and in its downtown." *Joint Appendix* at 330. This plausible allegation of a discrete discriminatory act, related to the larger isolation effort, occurred less than two years before this lawsuit was filed on February 17, 2009. Therefore, I conclude that the FHA claims against Homeward, VCU, and the City, as well as the equal protection and § 1983 claims against the City, are not time-barred.

Additionally, ASWAN alleges additional discrete acts in 2009. ASWAN alleges that, in 2009, "City officials advised homeless people . . . that during the winter of 2009-2010, homeless people would be required to go through Central Intake at the Conrad Center in order to receive shelter at the City's overflow shelter on very cold nights." By relocating access to the overflow shelter, ASWAN claims that the City has "succeeded in materially segregating disabled homeless people during daylight hours from Richmond's mainstream because of their ADA protected status." *Joint Appendix* at 328. This is a plausible allegation of a discrete discriminatory act by the City less than one year before the complaint was filed, rendering ASWAN's ADA claim against the City timely.

Similarly, ASWAN makes the following allegation against VCU:

> As part of VCU's actions against disabled homeless people, after Catholic Charities located Central Intake at the Conrad Center, VCU has sought to persuade faith-based providers of homeless meals now at Monroe Park to relocate their homeless feeding programs to the Conrad Center. Such actions by VCU . . . have included actions in 2009 to persuade faith-based organizations to move homeless meals programs to the Conrad Center. VCU's purpose in seeking to persuade such faith-based organizations to relocate such programs from Monroe Park to the Conrad Center have been to reduce the visibility of homeless people . . . near VCU's main campus.

*Joint Appendix* at 294. This too is a plausible allegation of a discrete discriminatory act by VCU less than one year before the complaint was filed, rendering the ADA claim against VCU timely.

In contrast, I find no allegation of a discrete discriminatory act by Homeward less than one year before the complaint was filed. Therefore, I agree that the ADA claim against Homeward is time-barred. I also agree with the dismissal of all claims against the Doe(s) defendants because I find no plausible allegation of any discriminatory act by them after 1996. The only act plausibly alleged against Doe(s) is an offer to contribute $2 million toward the construction of a facility for homeless persons on Oliver Hill Way in "late 1995 or early 1996." *Joint Appendix* at 282. Absent some discrete act during the limitations period, no continuing violation has been alleged against Doe(s). *Glendening*, 174 F.3d at 189.

In sum, I conclude that ASWAN has plausibly alleged continuing violations of the FHA against the City of Richmond, VCU, and Homeward. In my view, ASWAN also makes out

continuing ADA violations against the City of Richmond and VCU. I would also permit the equal protection and § 1983 claims against the City of Richmond to proceed under the continuing violation doctrine. To the extent that the majority opinion holds differently, I respectfully dissent.