WYNN, Circuit Judge,
concurring in part and dissenting in part:
Like Judge Motz, I join Judge Gilman’s conclusion that the conspiracy claim was properly dismissed because an agreement was not sufficiently alleged. I also join Judge Gilman’s conclusion that the retaliation claim was properly dismissed because Virginia Commonwealth University’s (“VCU”) alleged promise to provide transportation was merely gratuitous. However, I disagree with Judge Gilman’s and Judge Motz’s conclusion that A Society Without A Name’s (“ASWAN”) claims under the Fair Housing Act (“FHA”), Americans With Disabilities Act (“ADA”), Equal Protection Clause, and 42 U.S.C. § 1983 accrued when the Conrad Center opened and that subsequent acts alleged in the Second Amended Complaint do not constitute continuing violations.[1] Because I conclude that ASWAN plausibly alleged continuing violations against Homeward, VCU, and the City of Richmond, I must respectfully dissent in part.
The majority opinion correctly observes that ASWAN’S FHA, equal protection and § 1983 claims are subject to a two-year limitations period, and its ADA claims are subject to a one-year statute of limitations. 42 U.S.C. § 3613(a) (FHA); Al-Amin v. Shear, 325 Fed.Appx. 190, 193 (4th Cir. 2009) (unpublished) (equal protection and § 1983 claims); Wolsky v. Med. Coll. of Hampton Roads, 1 F.3d 222, 223 (4th Cir. 1993) (ADA). When considering whether a continuing violation is alleged, however, “The Supreme Court has ‘stressed the need to identify with care the specific [discriminatory] practice that is at issue.’” Garcia v. Brockway, 526 F.3d 456, 462 (9th Cir.2008) (en banc) (quoting Ledbetter v. Goodyear Tire & Rubber Co., 550 U.S. 618, 624, 127 S.Ct. 2162, 167 L.Ed.2d 982 (2007)); see also Havens Realty Corp. v. Coleman, 455 U.S. 363, 380, 102 S.Ct. 1114, 71 L.Ed.2d 214 (1982) (focusing on “the continuing nature of the alleged violation”); Nat’l Adver. Co. v. City of Raleigh, 947 F.2d 1158,1168 (4th Cir.1991) (examining the “nature of the wrongful conduct and harm alleged”) (quotation marks omitted). Here, ASWAN alleges at length in its ninety-five-page Second Amended Complaint that the defendants have engaged, since at least the early 1990s, in a series of calculated and discriminatory acts designed to isolate homeless persons from Richmond’s downtown, mainstream community.[2] ASWAN alleges that the defen *355 dants have only recently achieved this discriminatory isolation, essentially by two means: first, by the siting and construction of the Conrad Center in an allegedly remote location; and second, by the piecemeal relocation of services for homeless persons from the downtown community to the Conrad Center. See, e.g., Familystyle of St. Paul, Inc. v. City of St. Paul, Minn., 923 F.2d 91, 93-94 (8th Cir.1991) (upholding city ordinance tending to integrate and refusing to “agree that Congress intended the Fair Housing Amendment Act of 1988 to contribute to the segregation of the mentally ill from the mainstream of our society”); see also Human Res. Research & Mgmt. Grp., Inc. v. Cnty. of Suffolk, 687 F.Supp.2d 237, 253-54 (E.D.N.Y.2010) (citing Bryant Woods Inn, Inc. v. Howard Cnty., Md., 911 F.Supp. 918, 946 (D.Md. 1996)).
The Second Amended Complaint alleges that the systematic relocation of services— not the siting, construction or opening of the Conrad Center — is the practice that is causing homeless persons to be isolated from downtown Richmond. Therefore, I cannot join the view of the Magistrate Judge and the majority opinion that “ASWAN knew or should have known of its purported injury stemming from the alleged conspiracy to relocate homeless services from downtown to Oliver Hill Way when the Conrad Center opened on February 5, 2007.” Ante at 348.
Certainly, ASWAN suffered no discriminatory treatment by the mere construction or opening of the Conrad Center if its members could continue to receive needed services in the downtown, mainstream community. Rather, it is the relocation of those services, allegedly with the discriminatory motive of isolating homeless persons from downtown, that is the actionable injury. Cf. Frame v. City of Arlington, 616 F.3d 476, 489 (5th Cir.2010) (in action alleging that city’s impassable, and thus ADA noncompliant, sidewalks and pathways inhibited access by disabled persons to city’s services, programs or activities, statute of limitations ran from date plaintiff knew she was denied access to program, service or activity, not date pathway was constructed), reh’g en banc granted, 632 F.3d 177 (2011); Fair Housing Council, Inc. v. Village of Olde St. Andrews, Inc., 210 Fed.Appx. 469, 480 (6th Cir.2006) (in FHA inaccessibility case, statute of limitations runs from date plaintiff attempts to rent or buy the inaccessible unit, not the date it was built).
Accordingly, the majority errs by holding that ASWAN’S claims accrued on the date the Conrad Center opened and by dismissing the subsequent relocation of services to the Conrad Center as mere effects of its opening. As this Court has previously explained:
If the discrimination alleged is a single act, the statute begins to run at the time of the act. If, on the other hand, the statutory violation does not occur at a single moment but in a series of separate acts and if the same alleged viola *356 tion was committed at the time of each act, then the limitations period begins anew with each violation and only those violations preceding the filing of the complaint by the full limitations period are foreclosed.
Nat’l Adver. Co. v. City of Raleigh, 947 F.2d 1158, 1167 (4th Cir.1991). The limit to this rule is that subsequent effects from an earlier discriminatory act do not begin the limitations period anew; rather, “[t]he challenged action must be repeated within the statute of limitations period.” Id.; see also Jersey Heights Neighborhood Ass’n v. Glendening, 174 F.3d 180, 189 (4th Cir. 1999) (where location of highway was alleged discriminatory act, post-construction refusals to reconsider location or to mitigate impact of highway on neighborhood were mere effects of original alleged violation); Moseke v. Miller & Smith, Inc., 202 F.Supp.2d 492, 507-08 (E.D.Va.2002) (where plaintiffs alleged that condominiums did not comply with FHA, continued existence of noncompliant features were mere effects of original noncompliant construction).
To make out a continuing violation, ASWAN must therefore allege a discrete act of discrimination — related to the larger asserted isolation effort — that occurred within the applicable limitations period. Glendening, 174 F.3d at 189. ASWAN has done so in this case by alleging that discrete acts of the defendants between 2007 and 2009 caused in piecemeal fashion the isolation of homeless persons from downtown Richmond.
Instructive on this point is Lendo v. Garrett County Board of Education, 820 F.2d 1365, 1367 (4th Cir.1987), where this Court found no cause and effect relationship between allegedly discriminatory evaluations of a teacher’s performance and his subsequent denial of tenure. The Court rejected the characterization of the tenure denial as a mere effect of the earlier discriminatory performance evaluations; the tenure denial and performance evaluations were alleged as discrete acts of discrimination. Id. Although the evaluations and the denial of tenure were related, the teacher “could not have known with any degree of certainty [at the time of the evaluations] that he would eventually be denied tenure.” Id. Thus, the teacher was entitled “to develop his contentions” on the discrete denial-of-tenure claim, which accrued within the limitations period. Id. at 1368.
Similarly, in this case, the opening of the Conrad Center is related to the relocation of services there only insofar as the location of the Conrad Center has enabled the isolation of homeless persons from downtown Richmond. As demonstrated" by Lendo, however, this relationship does not mean that the relocation of a service to the Conrad Center — allegedly motivated by isolationist animus — is not a discrete act of discrimination. Indeed, the opening of the Conrad Center in no sense caused homeless persons to be isolated from downtown Richmond. Rather, defendants’ alleged acts that caused services to relocate from downtown to the Conrad Center are responsible for the alleged isolation. See Lendo, 820 F.2d at 1368 (the denial of tenure did not “inevitably follow the [discriminatory] evaluations so as to be an effect of them”). Any such discrete acts during the limitations period are not time-barred. Nat’l Adver. Co., 947 F.2d at 1167.
ASWAN plausibly alleges that the City of Richmond, Homeward, and VCU in April 2007 “pressured and encouraged Commonwealth Catholic Charities to locate at the Conrad Center on Oliver Hill Way a service called ‘Central Intake’ for homeless people to sign up for and be processed to obtain overnight shelter provided at local churches by CARITAS.” Joint Appendix at 294, 307, 327. ASWAN *357 alleges that Central Intake was previously located at “517 West Grace Street in Richmond’s mainstream and in its downtown.” Joint Appendix at 330. This plausible allegation of a discrete discriminatory act, related to the larger isolation effort, occurred less than two years before this lawsuit was filed on February 17, 2009. Therefore, I conclude that the FHA claims against Homeward, VCU, and the City, as well as the equal protection and § 1983 claims against the City, are not time-barred.
Additionally, ASWAN alleges additional discrete acts in 2009. ASWAN alleges that, in 2009, “City officials advised homeless people ... that during the winter of 2009-2010, homeless people would be required to go through Central Intake at the Conrad Center in order to receive shelter at the City’s overflow shelter on very cold nights.” By relocating access to the overflow shelter, ASWAN claims that the City has “succeeded in materially segregating disabled homeless people during daylight hours from Richmond’s mainstream because of their ADA protected status.” Joint Appendix at 328. This is a plausible allegation of a discrete discriminatory act by the City less than one year before the complaint was filed, rendering ASWAN’S ADA claim against the City timely.
Similarly, ASWAN makes the following allegation against VCU:
As part of VCU’s actions against disabled homeless people, after Catholic Charities located Central Intake at the Conrad Center, VCU has sought to persuade faith-based providers of homeless meals now at Monroe Park to relocate their homeless feeding programs to the Conrad Center. Such actions by VCU ... have included actions in 2009 to persuade faith-based organizations to move homeless meals programs to the Conrad Center. VCU’s purpose in seeking to persuade such faith-based organizations to relocate such programs from Monroe Park to the Conrad Center have been to reduce the visibility of homeless people ... near VCU’s main campus.
Joint Appendix at 294. This too is a plausible allegation of a discrete discriminatory act by VCU less than one year before the complaint was filed, rendering the ADA claim against VCU timely.
In contrast, I find no allegation of a discrete discriminatory act by Homeward less than one year before the complaint was filed. Therefore, I agree that the ADA claim against Homeward is time-barred. I also agree with the dismissal of all claims against the Doe(s) defendants because I find no plausible allegation of any discriminatory act by them after 1996. The only act plausibly alleged against Doe(s) is an offer to contribute $2 million toward the construction of a facility for homeless persons on Oliver Hill Way in “late 1995 or early 1996.” Joint Appendix at 282. Absent some discrete act during the limitations period, no continuing violation has been alleged against Doe(s). Glendening, 174 F.3d at 189.
In sum, I conclude that ASWAN has plausibly alleged continuing violations of the FHA against the City of Richmond, VCU, and Homeward. In my view, ASWAN also makes out continuing ADA violations against the City of Richmond and VCU. I would also permit the equal protection and § 1983 claims against the City of Richmond to proceed under the continuing violation doctrine. To the extent that the majority opinion holds differently, I respectfully dissent.

. For convenience, I hereafter refer to this particular conclusion as "the majority opinion.”

. I give here only a brief summary of the exhaustive and detailed allegations of historical facts (many of which are substantiated by documents in the Joint Appendix) leading to the recent isolation efforts that are the gravamen of the Second Amended Complaint. ASWAN alleges that through most of the '80s and '90s, the Daily Planet provided overnight shelter, daytime residency, meals, and employment assistance services to Richmond's homeless population at the Street Center, which was located on West Canal Street downtown. ASWAN further alleges that: In 1993, the City of Richmond sold the West Canal Street location and promised to assist in finding a new site for the Street Center. The Daily Planet settled on a site on West Grace Street "in Richmond’s mainstream near VCU’s campus.” Despite a substantial grant from the United States Department of Housing and Urban Development to purchase and develop the West Grace Street site, the Daily Planet did not pursue the site because VCU and the City threatened to curtail finan *355 cial support. VCU and the City conceitedly dissuaded the Daily Planet from pursuing other locations, including the City's restrictive zoning ordinances, which became the subject of a 1997 lawsuit. VCU and the City persistently urged the Daily Planet to relocate its services for the homeless on 17th Street (later renamed Oliver Hill Way). In 1997, the City adopted the Downtown Plan, which stated a policy of relocating services for homeless and other defined “street persons” away from downtown. Because of the Daily Planet’s unwillingness to accept the Oliver Hill Way location, the defendants allegedly propositioned Freedom House, another provider of homeless services in Richmond. Freedom House accepted the proposal, leased the Oliver Hill Way site from VCU, obtained from the City a special use permit to build a homeless shelter, and opened the doors of the Conrad Center on February 5, 2007.